Rosemary Adams HUFFMAN, Appellant (Petitioner below),

v.

Indiana OFFICE OF ENVIRONMENTAL ADJUDICATION, Indiana Department of Environmental Management, and Eli Lilly and Company, Appellees (Respondents below).

No. 49S02–0311–CV–578.

Supreme Court of Indiana.

June 30, 2004.

---

Rosemary Adams Huffman, Indianapolis, IN, Attorney for Appellant.

Daniel P. McInerny, George T. Patton, Jr., Indianapolis, IN, Attorneys for Appellee, Eli Lilly and Company.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General of Indiana, Indianapolis, IN, Attorneys for Appellee, Indiana Department of Environmental Management.

SULLIVAN, Justice.

The Indiana Office of Environmental Adjudication dismissed Rosemary Huffman's petition for administrative review of a decision of the Indiana Department of

Environmental Management renewing a pollution permit for Eli Lilly and Company. We hold, as did the Court of Appeals, that whether a person is entitled to seek administrative review depends upon whether the person is "aggrieved or adversely affected" (as provided in statute) by the administrative agency's decision and that the rules for determining whether the person has "standing" to file a lawsuit do not apply. We also conclude that a portion of the Office of Environmental Adjudication's determination that Huffman was not entitled to seek administrative review was not supported by substantial evidence.

### Background

Eli Lilly and Company (Lilly) petitioned the Indiana Department of Environmental Management (IDEM) for renewal of a National Pollutant Discharge Elimination System (NPDES) permit for its Greenfield Laboratories. The permit allows Lilly to discharge pollutants into Indiana's waters, specifically into the Leary Ditch. IDEM renewed the permit, and Rosemary Adams Huffman sought to challenge the permit's renewal by filing a Petition for Administrative Review with the Indiana Office of Environmental Adjudication (OEA).[1]

Huffman challenged the permit on several grounds: (1) Lilly did not disclose its planned facility expansion and so IDEM was not able to consider "the increased effluent that will result from this major expansion"; (2) "Lilly did not disclose the scheduled Leary Ditch clean up for which the taxpayers were recently assessed"; (3) IDEM accepted new information and made a "substantial number of permit revisions"

after "the close of public comment ... depriving the public of its right to review"; and (4) "IDEM failed to address health risks to the residential use of contiguous property from toxicology research and other Lilly activities involving discharge of water." (Appellant's App. at 48.)

At a prehearing conference, Lilly claimed that Huffman lacked standing to petition for administrative review. Chief Administrative Law Judge Wayne E. Penrod ordered Huffman to provide evidence of her legal interest in the property. Huffman filed an Amended Petition for Administrative Review that asserted her "interest ... is as a member of the public and that her family has residential property, in which she has had a legal interest for several years, contiguous to the Lilly property." (*Id.* at 41–42.) Lilly then filed a Motion to Dismiss Huffman's Amended Petition for lack of standing. In Huffman's response to that motion, she stated her legal interest more specifically—the property adjacent to Lilly's Greenfield Laboratories is owned by GreenWoods LLC; Huffman is the sole owner of a corporation named DOS, Inc., that owns one unit of and is the managing member of GreenWoods LLC.

Judge Penrod granted Lilly's motion. He reasoned that the judicial doctrine of standing applies to administrative proceedings and compliments the statutory provision of "aggrieved or adversely affected," the ground relied upon by Huffman to seek administrative review. He then found that Huffman had not demonstrated that she had standing to contest the per-

---

**1.** The OEA was established in 1995 to review decisions made by the commissioner of IDEM. Ind.Code § 4–21.5–7–3 (1998 & Supp. 2003), first enacted by P.L. 41–1995, § 2; *see also* 315 Ind. Admin. Code 1–1–1 (2004); 315 Ind. Admin. Code 1–3–2 (2004). The OEA "hears all administrative disputes aris-

ing from IDEM actions, including appeals of enforcement actions or IDEM-issued permits." Sharon A. Hilmes, *OEA Adopts Final Rules of Procedure*, 8 Ind. Envtl. Compliance Update (July 1998). Prior to the enactment of P.L. 41–1995, § 2, such administrative review was conducted within IDEM itself.

mit. The trial court affirmed Judge Penrod's decision but the Court of Appeals reversed, finding that "there is not substantial evidence to support the dismissal of her petition." *Huffman v. IDEM,* 788 N.E.2d 505, 506 (Ind.Ct.App.2003). IDEM and Lilly sought transfer, which we granted. 804 N.E.2d 757 (Ind.2003) (table). We now reverse the trial court.

# I

■ The Administrative Orders and Procedures Act (AOPA) limits judicial review of agency action. Agency action subject to AOPA will be reversed only if the court "determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4–21.5–5–14(d) (1998). We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law *de novo. LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000); *Lutheran Hosp. of Ft. Wayne v. State Dep't of Public Welfare,* 571 N.E.2d 542, 544 (Ind. 1991). The dispute in this case—whether Huffman is a proper party to seek administrative review—involves both a question of law and a determination of whether the OEA's decision was supported by substantial evidence.

Both the OEA and the trial court held that the "judicial doctrine of standing" applies to administrative proceedings and found that Huffman had no standing. The Court of Appeals, reasoning that the "judicial doctrine of standing applies to lawsuits filed in a trial court" and not to administrative proceedings, looked to the language of AOPA to determine who could seek administrative review. *Huffman,* 788 N.E.2d at 508. On petition to our Court, Lilly and IDEM urge the construction put forth by the OEA and the trial court. That is, they argue that a person must have the same "standing" to invoke administrative review under AOPA as the person would need to file a lawsuit in a trial court—and that because in their view Huffman would not have had such standing, she cannot seek administrative review. Huffman, for her part, contends that she would have had standing to file a lawsuit and so is entitled to administrative review.

■ Our court has recently had several opportunities to discuss what the OEA and lower courts here refer to as the "judicial doctrine of standing." This doctrine dictates "whether the complaining party [in a lawsuit] is the proper person to invoke the court's power." *State ex rel. Cittadine v. Ind. Dep't of Transp.,* 790 N.E.2d 978, 979 (Ind.2003); *see also City of Gary v. Smith & Wesson Corp.,* 801 N.E.2d 1222 (Ind. 2003); *Embry v. O'Bannon,* 798 N.E.2d 157 (Ind.2003). However, whether Huffman is the proper person to file a lawsuit is not at issue in this case. Rather, the question is whether Huffman is the proper person to invoke the OEA's power of administrative review of IDEM's permit renewal decision. Subject to constitutional constraints, of which none are asserted here, the Legislature may dictate access to administrative review on terms the same as or more or less generous than access to file a lawsuit. We therefore find imposition of the "judicial doctrine of standing" inappropriate here because AOPA itself identifies who may pursue an administrative proceeding.

AOPA provides that to qualify for administrative review of an agency order, a person must:

(1) States facts demonstrating that:

(A) the petitioner is a person to whom the order is specifically directed;

(B) the petitioner is aggrieved or adversely affected by the order; or

(C) the petitioner is entitled to review under any law.

Ind.Code § 4–21.5–3–7(a)(1) (1998). Huffman sought administrative review under the provision for persons who are "aggrieved or adversely affected by the order."

The statute does not define "aggrieved or adversely affected," but those words have a well-developed meaning. *Black's Law Dictionary* 73, 1154 (8th ed.2004), defines "aggrieved" as "having legal rights that are adversely affected," and "aggrieved party" as "a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." In another context, we have defined "aggrieved" as:

> [A] substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation.... The appellant must have a legal interest which will be enlarged or diminished by the result of the appeal.

*McFarland v. Pierce*, 151 Ind. 546, 547–48, 45 N.E. 706, 706–07 (1897) (construing statute allowing appeal to the Indiana Supreme Court), *quoted in Stout v. Mercer*, 160 Ind.App. 454, 460, 312 N.E.2d 515, 518 (1974) (citations and quotations omitted); *accord Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782, 786 (Ind.2000). Essentially, to be "aggrieved or adversely affected,"

a person must have suffered or be likely to suffer in the immediate future harm to a legal interest, be it a pecuniary, property, or personal interest.

The view that the rules of standing to file a lawsuit apply to administrative proceedings originates from a case of this Court, *Insurance Commissioners of Indiana v. Mutual Medical Insurance, Inc.*, 251 Ind. 296, 241 N.E.2d 56 (1968),[2] upon which IDEM and Lilly rely. At the time, AOPA's predecessor statute, the Administrative Adjudication Act (AAA), was in effect, and allowed "all interested persons or parties" the ability to seek administrative review of agency action. Ind. Code § 4–22–1–4 (repealed effective July 1, 1987).

In *Mutual Medical*, the Indiana State Podiatrists' Association filed a complaint against Mutual Medical Insurance Company with the Insurance Commissioner, alleging that some of Mutual Medical's insurance policies illegally excluded certain services from compensation when those services were performed by podiatrists. The Commissioner ruled for the Podiatrists' Association but the trial court reversed and the Podiatrists' Association appealed. At the trial level and on appeal, Mutual Medical argued that the Podiatrists' Association did not have standing to participate in the legal action because it had "no justiciable interest in the controversy." *Mutual Medical*, 251 Ind. at 299, 241 N.E.2d at 58.

This Court addressed two questions. First, whether an administrative agency could "entertain a hearing on a complaint brought by a complainant who has no justiciable interest in the alleged unlawful ac-

---

**2.** Both the OEA and trial court cite *Indiana Alcoholic Beverage Commission v. McShane*, 170 Ind.App. 586, 596, 354 N.E.2d 259, 266 (1976), but that case relied on *Mutual Medical*.

tion charged." *Id.* We answered that question in the affirmative:

> The Insurance Law and the Administrative Adjudication Act do not contemplate the proposition that a complaint must be filed by a party with legal standing to invoke the jurisdiction of the Insurance Commissioner to review the legality of insurance policy provisions. The personal merit, standing or legal interests and motives of a private complainant under these statutory provisions, are immaterial to the jurisdiction of the Insurance Commissioner, *if the practice complained of is one in which the public generally has an interest.*

*Id.* at 300, 241 N.E.2d at 59 (citations omitted) (emphasis added).

The Court then addressed a second question: "May a complainant, who has no legal standing to sue, become a party to the administrative proceeding with legal standing on appellate review." *Id.* at 299, 241 N.E.2d at 58. We answered in the negative, because of two barriers. First, the AAA had a provision limiting judicial review of "any order or determination made by any such agency" to "[a]ny party or person aggrieved." Ind.Code § 4–22–1–14 (repealed effective July 1, 1987). Second, the judicial doctrine of standing required that "in order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue." *Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind.1985).

But this situation created a problem. If a person was entitled to an administrative hearing but not judicial review, it was possible that not all sides would be represented on review and that review would then be ineffective and incomplete. *Mutual Medical,* 251 Ind. at 301, 241 N.E.2d at 59–60. The Court tried to remedy this problem by holding that Indiana's "rules of standing are applicable to administrative proceedings"; if a person did not have standing, the person could not become a party to the administrative hearing. *Id.* Under the Court's answer to the first question, however, those without standing could still get a hearing if the practice complained of was one in which the public generally had an interest. Subsequent Court of Appeals' cases have glossed over this nuance and have read *Mutual Medical* for the proposition that the doctrine of standing applies to administrative proceedings under the AAA. *City of Hammond v. Red Top Trucking Co.,* 409 N.E.2d 655, 657 (Ind.Ct.App.1980); *Dep't of Fin. Insts. v. Wayne Bank & Trust Co.,* 178 Ind.App. 265, 269–72, 381 N.E.2d 1100, 1103–05 (1978); *Ind. Alcoholic Beverage Comm'n v. McShane,* 170 Ind.App. 586, 596, 354 N.E.2d 259, 266 (1976); *Bowen v. Metro. Bd. of Zoning Appeals,* 161 Ind.App. 522, 527, 317 N.E.2d 193, 197 (1974).[3]

*Mutual Medical* was decided under the AAA, not AOPA. Unlike its predecessor, the AAA, which allowed "all interested persons or parties" the ability to seek administrative review, AOPA reserves administrative review for a more narrow

---

3. Only one case has appreciated the nuance of *Mutual Medical.* In *Hazelett v. Blue Cross & Blue Shield of Indiana,* the Court of Appeals stated:

> Our Supreme Court held that the Podiatrists' Association did not have legal standing and therefore could not be a party either to the administrative proceedings or to the judicial review of those proceedings. However, the court went on to state that the standing of the Podiatrists' Association was not required to put the issue of the policy provision before the Commissioner.

400 N.E.2d 1134, 1136 (Ind.Ct.App.1980).

class.[4] As a consequence, under AOPA, we do not believe a situation will arise in which a party to administrative review would not have standing to seek judicial review in court. Said differently, the reach of the judicial standing doctrine certainly includes persons aggrieved or adversely affected by administrative agency action given that the definition of "aggrieved or adversely affected" requires harm to a pecuniary, property, or personal interest. IDEM and Lilly warn that if the definition of "aggrieved or adversely affected" "means something different than the recognized standing requirement . . . . [this] could open administrative tribunals to persons who have no real, personal stake in the outcome of a case, but merely believe themselves to be aggrieved." (Pet. to Transfer at 8.) This argument ignores the fact that the concept of "aggrieved" is more than a feeling of concern or disagreement with a policy; rather, it is a personalized harm.

■ In any event, AOPA defines who can get administrative review. When a statute is clear, we do not impose other constructions upon it. *Ind. Bell Tel. Co. v. Ind. Util. Regulatory Comm'n,* 715 N.E.2d 351, 354 (Ind.1999) (citing *Ind. Dep't of State Revenue v. Horizon Bancorp,* 644 N.E.2d 870, 872 (Ind.1994)). IDEM and Lilly assert that the legislative intent of the statute was to bring it "into alignment with controlling Indiana case law" on standing. (Pet. to Transfer at 7.) While the change in the language from "all interested persons or parties" to "aggrieved or

adversely affected" suggests an intention to narrow the class of persons who can seek administrative review, there is no clear evidence of a legislative intent to make that class and the class of persons who have standing one in the same. If that were so, one would think the Legislature would have used phrases like "personal stake" or "direct injury" that were prevalent at the time in the case law of standing. It did not.

■ Huffman takes the position that the common law doctrine of "public standing" would provide her standing to invoke judicial review in a trial court. "Public standing" allows persons with no personal stake in a matter to bring suit when certain public rights are at issue.[5] Huffman reasons that if public standing is allowed at the trial court level, then it is allowed at the administrative proceeding level, where the purpose "is to develop public policy where public rights are at interest." (Br. in Resp. to Pet. to Transfer at 5.)

Just as the judicial doctrine of standing does not apply to administrative proceedings, its public standing component is also inapplicable. The language of AOPA does not allow for administrative review based on a generalized concern as a member of the public. The statute says "aggrieved or adversely affected" and this contemplates some sort of personalized harm. To repeat, this is a different standard than that under the previous AAA statute that allowed "all interested persons or parties" the ability to seek administrative review and arguably allowed for some type of

---

**4.** The legislature is always free to amend AOPA, and may enlarge the class of persons who may seek administrative review.

**5.** "Indiana cases recognize certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. This Court held in those cases that when a case

involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official." *Cittadine,* 790 N.E.2d at 980 (quoting *Schloss v. City of Indianapolis,* 553 N.E.2d 1204, 1206 n. 3 (Ind.1990) (quoting in turn *Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind.1985))).

public standing. Moreover, in many instances, the public is allowed time to comment on administrative agency action before it occurs or becomes final. Indeed, Huffman stated that she "actively expressed her concerns during the public comment phase of IDEM's decision-making." (Appellant's App. at 33.) We therefore decline to find such an exception in AOPA.

We hold that the statute, and only the statute, defines the class of persons who can seek administrative review of agency action.

## II

With this understanding in mind, we now turn to whether the OEA properly found that Huffman is not aggrieved or adversely affected.[6] We conclude that some of the OEA's findings are not supported by substantial evidence. This conclusion is largely based on the procedural treatment given Lilly's Motion to Dismiss.

## A

Lilly brought its Motion to Dismiss under Indiana Trial Rule 12(B)(1) and 315 Ind. Admin. Code 1 (2004). Under 315 Ind. Admin. Code 1-3-1(10), administrative law judges may apply the rules of trial procedure to administrative proceedings. In this instance, the administrative law judge did not make clear the standard that he used in ruling on the motion. He quoted the language of the statute, declaring that Huffman "stated no facts demonstrating that she is personally aggrieved or adversely affected by the Permit issuance." (Appellant's App. at 26.) Under

that standard, the judge examines the face of the petition to see whether any facts stated indicate that the petitioner is aggrieved or adversely affected by the administrative agency's action. Here, however, the judge looked beyond the face of the petition and considered additional evidence provided by both sides in ruling on the motion to dismiss. Specifically, the judge considered from the motion papers evidence of Huffman's ownership interest in the property and evidence of the pollutant discharge point into the Leary Ditch. The trial court's findings of fact and conclusions of law rely on the same information.

On appeal, the court noted that although Lilly filed its motion under 12(B)(1), lack of subject matter jurisdiction, motions to dismiss for lack of standing are properly brought under 12(B)(6), for failure to state a claim. *Huffman*, 788 N.E.2d at 509–10. The court proceeded to evaluate Lilly's motion as a 12(B)(6) motion and found that there was not substantial evidence supporting the OEA's decision to dismiss Huffman's petition for review. *Id.* at 510–11.

If the administrative law judge intended to apply Indiana's trial rules, as Lilly requested by invoking Trial Rule 12(B)(1), the motion should have been treated as a 12(B)(6) motion. The question here is whether Huffman is a proper person to challenge Lilly's permit and not whether IDEM has subject-matter jurisdiction over challenges to the permits it issues. IDEM always has jurisdiction over such challenges, and that does not change depend-

---

6. On Petition to Transfer, IDEM and Lilly argue that Huffman is judicially estopped from asserting she has standing when she conceded in her Amended Petition that she "did not actually own property next to Lilly's property and that she merely owned stock in a company that had an interest in another

company that had property adjacent to Lilly's Greenfield property." (Pet. to Transfer at 10.) This is a mischaracterization of Huffman's argument. She has consistently argued that she is aggrieved or adversely affected, and so the doctrine of judicial estoppel simply has no relevance here.

ing upon the petitioner. The standard for a 12(B)(6) motion is that articulated by the Court of Appeals:

> In reviewing a Rule 12(B)(6) motion, a court is required to take as true all allegations upon the face of the complaint and may only dismiss if the plaintiff would not be entitled to recover under any set of facts admissible under the allegations of the complaint. This Court views the pleadings in a light most favorable to the nonmoving party, and we draw every reasonable inference in favor of that party.

*Huffman,* 788 N.E.2d at 510 (citations omitted); *see also State Civil Rights Comm'n v. County Line Park, Inc.,* 738 N.E.2d 1044, 1049 (Ind.2000); *Lawson v. First Union Mortgage Co.,* 786 N.E.2d 279, 281 (Ind.Ct.App.2003). Trial Rule 12(B) also states that if, on a 12(B)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The standard of Trial Rule 56 is that "[t]he judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

The administrative law judge considered the additional information provided in the motion papers, but never gave the parties an opportunity to provide additional evidence or to develop the arguments more fully, such as through a hearing. The consequence is that some of the findings are not supported by substantial evidence.

**B**

The OEA appeared to base its decision on three considerations. First, that Huffman brought the petition on her own behalf and not on behalf of the corporation that owns the property. Second, that she did not state facts showing how she was aggrieved or adversely affected by the issuance of the permit. And third, that the point where Lilly discharged pollutants was approximately 2800 feet west and downstream from the nearest point of the property.[7]

 The OEA's finding on this first issue is supported by substantial evidence. A general rule of corporate law is that shareholders cannot bring actions in their "own name to redress an injury to the corporation." *Knauf Fiber Glass, GMBh v. Stein,* 622 N.E.2d 163, 165 (Ind.1993); *Speedway Realty Co. v. Grasshoff Realty Corp.,* 248 Ind. 6, 9, 216 N.E.2d 845 (Ind. 1966) ("It is fundamental that every action must be prosecuted in the name of the real party in interest." (quotation and citation omitted)). The rationale for this rule is twofold. First, if a shareholder sues for money damages for injury to the corporation, there is a concern that the corporation itself could still sue and inflict double punishment on the defendant. Meanwhile, the shareholder has received money that is really owed to the corporation. Second, there is a concern that the real party's interests will not be taken into account if that party is not represented in the action. The shareholder and the corporation may have different interests and goals in litigation, and the shareholder could act in ways that harm the corporation, even if unintentionally.

Huffman is seeking to have the permit invalidated and is not seeking damages, so

---

7. It was also noted that Huffman resides in Indianapolis, but that is irrelevant if Huffman otherwise has a legal interest that is harmed by Lilly's permit.

the first concern is not present. But the second concern is. Huffman stated in her response to the motion to dismiss that she owns a corporation that owns one unit of and is the managing member of the corporation that owns the property. Huffman argues that "[a] 'property' right is not a requirement." (Br. in Resp. to Pet. to Transfer at 12.) While that is true, it ignores instances where someone else has a property right that is affected. In those situations, the holder of the property right is the person who should bring claims based on harm to the property. Green-Woods LLC, as the property owner and real party in interest, is therefore the proper party to seek administrative review for harm to the property. This issue is sufficiently clear from the information provided by the parties that it needs no further development.

██ The OEA's determinations on the second and third issues, however, are not supported by substantial evidence. The OEA found that Huffman stated no facts demonstrating how she was aggrieved or adversely affected by Lilly's permit. However, one of the bases for Huffman's challenge to Lilly's permits was that "IDEM failed to address health risks to the residential use of contiguous property from toxicology research and other Lilly activities involving discharge of water." (Appellant's App. at 48.) In Huffman's response to the motion to dismiss, she stated that she "is extremely concerned" by the permit "because she has in fact managed this property since 1987 and that responsibility requires that she and her agents be on the property with frequency." (*Id.* at 33, 216 N.E.2d 845.) Under the 12(B)(6) standard, a motion to dismiss is inappropriate if a party could recover under any set of facts admissible under the allegations of the complaint. Particularly because the OEA never gave Huffman an opportunity

to provide additional evidence or to develop the argument more fully, it was impossible for the OEA to tell what Huffman's personal health claim was and whether it had any merit. Dismissing this claim was therefore premature.

The OEA also seemed to have based its decision in part on a statement in Lilly's motion to dismiss, which it quoted in its order:

Based upon calculations performed by Lilly, the Lilly discharge point in Leary Ditch is approximately 2800 feet west and downstream from the nearest point on the Adams Property, and from the discharge point Leary Ditch continues to flow downstream away from the Adams Property. The plain fact is that Lilly's permitted discharge to Leary Ditch has no impact, adverse or otherwise, upon the Petitioner or the Adams Property.

(Appellant's App. at 27.) IDEM and Lilly try to bolster this position by pointing out that Huffman "did not dispute [that] the discharge did not even touch the property in which she owns one unit of stock." (Pet. to Transfer at 9.) Huffman responds that she was not required to refute such "an unsworn allegation." (Br. in Resp. to Pet. to Transfer at 11.)

Motions brought under Trial Rule 12(B)(6) and Trial Rule 56 do not need to be sworn or verified. Trial Rule 11 requires that an attorney or unrepresented party sign every pleading or motion, thereby certifying "that he has read the pleadings; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay." Ind. Trial Rule 11(A). Lilly's attorney signed the Motion to Dismiss. A party may make a summary judgment motion "with or without supporting affidavits," T.R. 56(A), and affidavits are defined as "voluntary declaration[s] of facts written down and sworn to

by the declarant before an officer authorized to administer oaths." *Black's Law Dictionary* 62 (8th ed.2004). Lilly, however, submitted no affidavits with its Motion to Dismiss. Therefore, the fact that the allegation regarding the discharge point is "unsworn" is not a valid excuse for failing to respond to it. Nevertheless, that one statement from Lilly is an insufficient basis on which to dismiss Huffman's petition. Even if what Lilly and IDEM said was true about the position of the discharge point, that alone does not prove that there is no harm to the property or to Huffman from the discharge. This is precisely the type of fact that needs further development before it can be resolved.

We conclude for these reasons that the OEA's dismissal of Huffman's Petition for Administrative Review was not supported by substantial evidence.

### Conclusion

We affirm the OEA's dismissal of Huffman's claim as it relates to potential property damage and reverse as it relates to health problems. We remand to the trial court with instructions to remand to the OEA for further proceedings consistent with this opinion.

SHEPARD, C.J., and BOEHM and RUCKER, JJ., concur.

DICKSON, J., concurs in result without opinion.