SAVE THE VALLEY, INC., Hoosier Environmental Council, Inc., and Citizens Action Coalition of Indiana, Inc., Appellants–Respondents–Defendants,

v.

INDIANA–KENTUCKY ELECTRIC CORPORATION, Appellee–Petitioner–Plaintiff,

Indiana Department of Environmental Management, Appellee–Petitioner.

No. 49A04–0312–CV–610.

Court of Appeals of Indiana.

Jan. 11, 2005.

Rehearing Granted March 31, 2005.

Michael A. Mullett, Mullett Polk & Associates, LLC Indianapolis, IN, for Appellants.

Howard A. Learner, Shannon Fisk, Environmental Law and Policy Center, Chicago, IL, William R. Groth, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, for Amicus Curiae.

Anthony C. Sullivan, Bryan G. Tabler, Barnes & Thornburg, LLP, Indianapolis, IN, for Appellee, Indiana–Kentucky Electric Corporation.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, for Appellee, Indiana Department of Environmental Management.

## OPINION

BARNES, Judge.

### Case Summary

Save the Valley, Inc., Hoosier Environmental Counsel, Inc., and Citizens Action Coalition of Indiana, Inc., (collectively "Ap-

pellants") appeal the denial of their motion to dismiss and the granting of a motion for partial summary judgment filed by Indiana–Kentucky Electric Corporation ("IKEC"). We reverse.

## Issue[1]

The Appellants raise three issues, which we consolidate and restate as whether the trial court properly granted IKEC's partial motion for summary judgment.

## Facts

IKEC owns Clifty Creek Station, a coal-fired electric generating station in Jefferson County. On December 11, 2002, the Indiana Department of Environmental Management ("IDEM") (collectively with IKEC referred to as "Appellees") issued an order renewing IKEC's permit to operate a coal ash landfill near the Clifty Creek site.

On December 26, 2002, the Appellants petitioned for review of the granting of the permit with the Office of Environmental Management ("OEA"). The Appellants' petition alleged that unnamed members of their groups reside, work, and recreate in the area affected by the permit and that they would be adversely affected by the granting of the permit. On February 7, 2003, IKEC moved to dismiss the petition alleging that the Appellants did not state facts demonstrating that they were aggrieved or adversely affected by the granting of the permit. IKEC later alleged that the OEA was without jurisdiction over the case because the Appellants' petition did not demonstrate that they were persons aggrieved or adversely affected by the granting of the permit.

On March 31, 2003, the Appellants filed an amended petition alleging that named members of the groups reside, work, and recreate in the area affected by the granting of the permit. The amended petition also specified that the individual members would be adversely affected by the impact on the groundwater and by fugitive dust from the landfill. On June 23, 2003, the OEA denied IKEC's motion to dismiss on the ground that the Appellants had "associational standing," which gave the OEA jurisdiction over the case.

On July 3, 2003, IKEC filed a verified petition for judicial review and a complaint for declaratory judgment with the trial court. On July 23, 2003, IDEM also filed a petition for judicial review. On July 24, 2003, IKEC filed a motion for summary judgment on its complaint for declaratory judgment. On July 28, 2003, the cases were consolidated. The Appellants then filed motions to dismiss the Appellees' petitions for judicial review alleging that the trial court did not have subject matter jurisdiction over the petitions. The Appellants did not file a timely response to IKEC's motion for summary judgment.

On October 27, 2003, the trial court granted IKEC's motion for summary judgment and denied the Appellants' motions to dismiss. The trial court concluded that the OEA never had jurisdiction over the case or the authority to award any administrative remedy except the dismissal of the Appellants' petition because the Appellants' petition did not demonstrate that they were aggrieved or adversely affected by the granting of the permit. The Appellants now appeal.[2]

1. We deny the Appellants' request for oral argument.

2. On May 12, 2004, we received an amicus curiae brief from AARP, Cedar Creek Wildlife Project, Crooked Creek Community Counsel, Environmental Law and Policy Center, Heart-

wood, Improving Kids Environment, Indiana Alliance for Democracy, Indiana Coalition for Open Government, Indiana Division of the Izaak Walton League of America, Indiana Forest Alliance, Indiana State AFL–CIO, Marion County Alliance of Neighborhood Associa-

## Analysis[3]

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *State Farm Fire & Cas. Co. v. C.F.*, 812 N.E.2d 181, 183 (Ind.Ct.App.2004). "When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, as is the case here, we review the matter de novo." *Hopper v. Carey*, 810 N.E.2d 761, 764 (Ind.Ct.App.2004), *trans. denied.* Further, we are not bound by the findings and conclusions entered by the trial court in its summary judgment order. *Metropolitan Development Comm'n of Marion County v. Pinnacle Media, LLC*, 811 N.E.2d 404, 409 (Ind.Ct.App.2004).

The Appellants argue that they had standing to petition for administrative review of the granting of IKEC's petition under the doctrine of associational standing. The Appellees respond that the Administrative Orders and Procedures Act ("AOPA") does not give the Appellants standing to petition for administrative review. This issue has not been addressed in Indiana.[4]

Indiana Code Section 4–21.5–3–7(a)(1), which describes how a party may seek administrative review, provides that a person must petition for review in a writing that states facts demonstrating: "(A) the petitioner is a person to whom the order is specifically directed; (B) the petitioner is aggrieved or adversely affected by the order; or (C) the petitioner is entitled to review under any law." In *Huffman v. Office of Environmental Adjudication*, 811 N.E.2d 806 (Ind.2004), our supreme court recently addressed the issue of standing to seek administrative review. In that case, the court addressed whether the judicial doctrine of standing applied to administrative proceedings. The court concluded that there was no clear evidence of a legislative intent to make the class of persons who may seek administrative review and the class of persons who have standing one and the same. *Id.* at 812. The court held, "the statute, and only the statute, defines the class of person who can seek administrative review of agency action." *Id.* at 813. The statute and *Huffman* are silent regarding an association's standing to sue on behalf of its members.

The United States Supreme Court has concluded that an association has standing to sue on behalf of its members when: "(a)

tions, Natural Resources Defense Council, Sassafras Audubon Society, Save the Dunes Council, Society of Professional Journalists, United Senior Action, and Valley Watch. On August 3, 2004, we received a reply amicus curiae brief. We hereby grant their petitions to file an amicus curiae brief and a reply amicus curiae brief.

3. The Appellants argue that IDEM waived any challenges to their alleged lack of standing because IDEM did not raise an objection to the Appellants' standing before the OEA. However, to the extent this issue is relevant, we conclude that IDEM may proceed with a challenge to the Appellants' standing. We have observed that a party who raises a new issue for the first time on appeal does not

necessarily waive that claim if the opposing party had unequivocal notice of the existence of the issue and an opportunity to defend against it. *McGill v. Ling*, 801 N.E.2d 678, 687–88 (Ind.Ct.App.2004), *trans. denied.* Because IKEC raised a similar standing challenge before the OEA, the Appellants had notice of the issue and the opportunity to defend against it at the trial court level.

4. In *FDL v. Steuben County Waste Watchers, Inc.*, 749 N.E.2d 1243, 1255 (Ind.Ct.App. 2001), the issue of an association's standing to seek administrative review was waived for failing to raise the issue during the administrative proceedings. Thus, we did not reach the merits of the issue.

its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 344, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383 (1977).

[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.

*Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975).

Several states have adopted the *Hunt* test and allow associations to proceed on behalf of their members. *See, e.g., Bama Budweiser of Montgomery, Inc. v. Anheuser–Busch, Inc.,* 783 So.2d 792, 795 (Ala. 2000); *Neighborhood Ass'n v. Episcopal Comm. Servs.,* 148 Ariz. 1, 712 P.2d 914, 919 (1985); *Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 v. California Unemployment Ins. Appeals Bd.,* 190 Cal.App.3d 1515, 236 Cal.Rptr. 78, 82–84 (Ca.App.1987); *Connecticut Ass'n of Health Care Facilities, Inc., v. Worrell,* 199 Conn. 609, 508 A.2d 743, 747–48 (1986); *Oceanport Indus. v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 902 (Del.1994); *Florida Home Builders Ass'n v. Dept. of Labor & Emp. Sec.,* 412 So.2d 351, 353 (Fla.1982); *Aldridge v. Georgia Hospitality & Travel Ass'n,* 251 Ga. 234, 304 S.E.2d 708, 710 (1983); *Aged Hawaiians v. Hawaiian Homes Comm'n,* 78 Hawai'i 192, 891 P.2d 279, 292 (1995); *Glengary–Gam-*

*lin Protective Ass'n v. Bird,* 106 Idaho 84, 675 P.2d 344, 347–48 (1983); *NEA–Coffeyville v. Unified Sch. Dist. No. 445,* 268 Kan. 384, 996 P.2d 821, 824 (2000); *Louisiana Assoc. Gen. Contractors, Inc., v. State,* 669 So.2d 1185, 1190 (La.1996); *Animal Legal Def. Fund, Inc., v. Fisheries Wildlife Bd.,* 416 Mass. 635, 624 N.E.2d 556, 559 (1993); *State v. Philip Morris Inc.,* 551 N.W.2d 490, 497–98 (Minn.1996); *Mississippi Manufactured Hous. Ass'n v. Bd. of Aldermen,* 870 So.2d 1189, 1193 (Miss. 2004); *Missouri Outdoor Adver. Ass'n v. Missouri State Highways & Transp. Comm'n,* 826 S.W.2d 342, 344 (Mo.1992); *Dental Soc'y v. Carey,* 61 N.Y.2d 330, 474 N.Y.S.2d 262, 462 N.E.2d 362, 363 (1984); *Ohio Acad. of Nursing Homes, Inc., v. Barry,* 37 Ohio App.3d 46, 523 N.E.2d 523, 524 (1987); *Oklahoma Pub. Employee's Ass'n v. Oklahoma Dep't of Cent. Servs.,* 55 P.3d 1072, 1077 (Okla.2002); *Beaufort Realty Co. v. Beaufort County,* 346 S.C. 298, 551 S.E.2d 588, 589 (2001); *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 447 (Tex.1993); *Utah Rest. Ass'n v. Davis County Bd. of Health,* 709 P.2d 1159, 1163 (Utah 1985); *Parker v. Town of Milton,* 169 Vt. 74, 726 A.2d 477, 480 (1998); *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports,* 146 Wash.2d 207, 45 P.3d 186, 189 (2002); *Snyder v. Callaghan,* 168 W.Va. 265, 284 S.E.2d 241, 250–52 (1981).

As recognized by the Connecticut Supreme Court, associational standing advances two important objectives. First, allowing an association to represent its members' interests promotes judicial economy and efficiency. *Worrell,* 199 Conn. at 617, 508 A.2d 743. The *Hunt* requirements allow a single plaintiff, in a single lawsuit, to adequately represent the interests of many members, avoiding repetitive and costly independent actions. *Id.* at 617–18, 508 A.2d 743. Associational standing also allows members, who would have

standing in their own right, to pool their financial resources and legal expertise to help ensure complete and vigorous litigation of the issues. *Id.* at 618, 508 A.2d 743. A third reason for allowing associational standing was recognized by the Georgia Supreme Court when it observed that associations are generally less susceptible than individuals to retaliations by officials responsible for executing the challenged polices. *Aldridge,* 304 S.E.2d at 710.

IKEC argues that three Indiana cases reject associational standing; however, we disagree with its reading of the cases. First, in *Robertson v. Bd. of Zoning Appeals, Town of Chesterton,* 699 N.E.2d 310, 315 (Ind.Ct.App.1998), the Hoosier Environmental Council asserted it had standing as a public ombudsman to protect the interest of the community. We concluded that a party seeking certiorari pursuant to Indiana Code Section 36–7–4–1003 on behalf of a community as a whole must show some special injury other than that sustained by the community as a whole. *Id.* The case before us today is distinguishable on two grounds. First, the statutory scheme addressing zoning appeals is different than that provided for in AOPA. More importantly, however, the Appellants are not claiming a general injury sustained by the community as a whole. Instead, they are asserting that certain members of their groups are aggrieved or adversely affected by the granting of the permit, and they are seeking to act in a representational capacity on behalf of those members.

In *Williams–Woodland Park Neighborhood Ass'n v. Bd. of Zoning Appeals of City of Fort Wayne,* 638 N.E.2d 1295, 1299 (Ind.Ct.App.1994), and *Union Township Residents Ass'n, Inc. v. Whitley County Redev. Comm'n,* 536 N.E.2d 1044, 1045 (Ind.Ct.App.1989) we concluded that the associations had not shown that they owned property or had a legal interest affected by the zoning boards' decisions. Again, however, the zoning cases fall under a different statutory scheme. Further, there is no indication that the associations were attempting to assert the interests of specific members who were harmed by the boards' decisions. In fact, in both cases individual property owners were seeking certiorari in addition to the associations. Because the associations in these cases were not acting on behalf of the individual members who were harmed by the boards' decisions, we find the cases inapposite to our consideration today.

The Appellants were not proceeding in their own right nor were they asserting that the public as a whole was harmed by the granting of the permit.[5] Instead, the Appellants were proceeding on behalf of specific members who were individually aggrieved or adversely affected by IDEM's decision. Because the Appellants were simply acting in a representational capacity on behalf of the members who were aggrieved or adversely affected by the granting of the permit, Indiana Code

---

**5.** Indiana Code Section 13–30–1–1 provides that, among others, a citizen of Indiana or a corporation

  may bring an action for declaratory and equitable relief in the name of the state of Indiana against an individual, a partnership, a copartnership, a firm, a company, a corporation, a limited liability company, an association, a joint stock company, a trust, an estate, a state agency or an officer of the state, a city, a town, a county, a local gov-

ernmental unit, an agency, or an official of a city, a town, a county, a local governmental unit, or an agency, or any other legal entity or their legal representative, agent, or assigns for the protection of the environment of Indiana from significant pollution, impairment, or destruction.

However, as IDEM points out, the Appellants did not proceed under this theory and it is not otherwise relevant to our discussion today.

Section 4–21.5–3–7 is satisfied. In this context, the associations' standing is based on its members possessing standing to seek administrative review in their own right. We see no reason why the Appellants should not be permitted to seek administrative review under the doctrine of associational standing.

In determining whether the Appellants satisfy the three requirements set out in *Hunt*, the parties do not appear to dispute that the named members are aggrieved or adversely affected by the granting of the petition. More specifically, however, the members named in the Appellants' amended petition appear to have standing in their own right because they allege to be aggrieved or adversely affected by IDEM's granting of the petition. "Aggrieved" has been defined as another person's actions or a court's decree or judgment adversely affecting someone's personal, pecuniary, or property rights. *Huffman*, 811 N.E.2d at 810. "Aggrieved" has also been defined as a substantial grievance, including the denial of a personal or property right or the imposition of a burden or obligation on a party. *Id.*

The petition alleged that members of the groups reside, work, and recreate in the area affected by the landfill and that the individual members would be adversely affected by the impact on the groundwater and by fugitive dust from the landfill. Second, because the Appellants aim to protect the environment and advance members' interests on energy and utility issues, the interests they seek to protect are germane to the organizations' purposes. Third, the Appellants only sought review of the granting of a permit and not an award of monetary damages, which would have required individualized proof. *See*

*Worrell* at 617, 508 A.2d 743. Thus, the three requirements of the *Hunt* test are satisfied.[6]

Finally, based on our conclusion that the Appellants had standing to seek administrative review, we must also conclude that the trial court improperly denied their motion to dismiss IKEC's petition for judicial review and complaint for declaratory judgment. Because the Appellants had standing, the OEA had jurisdiction over the case, requiring the Appellees to comply with the AOPA procedures for seeking judicial review.

### Conclusion

The trial court improperly granted IKEC's motion for partial summary judgment and also improperly denied the Appellants' motions to dismiss. We reverse.

Reversed.

NAJAM, J., and SULLIVAN, J., concur.

---

**6.** Because of our holding today, we need not consider the Appellants' claims concerning the requirements for full approval of federally delegated environmental permit programs.