**INDIANA–KENTUCKY ELECTRIC CORPORATION, Appellant–Petitioner,**

**Indiana Department of Environmental Management, Party Pursuant to Ind.Code § 4–21.5–5–6(d),**

v.

**SAVE THE VALLEY, INC., Hoosier Environmental Council, Inc., and Citizens Action Coalition of Indiana, Inc., Appellees–Respondents.**

No. 49A02–1011–MI–1178.

Court of Appeals of Indiana.

Aug. 9, 2011.

---

Bryan G. Tabler, Anthony C. Sullivan, Mark J. Crandley, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellant.

Jeffrey B. Hyman, Conservation Law Center, Bloomington, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Indiana–Kentucky Electric Corp. (IKEC) received a solid waste permit to

operate a landfill, and several environmental groups, Save the Valley, Inc., Hoosier Environmental Council, Inc., and Citizens Action Coalition of Indiana, Inc. (collectively "Citizens Groups"), filed a petition for review of the permit. A dispute then arose over whether Citizens Groups had standing to challenge IKEC's permit. As a matter of first impression, this Court, relying in part on a recent Indiana Supreme Court decision, held that Citizens Groups could seek administrative review under the doctrine of associational standing. *Save the Valley, Inc. v. Indiana–Kentucky Elec. Corp.*, 820 N.E.2d 677 (2005). The case was remanded to the administrative agency. After IKEC was successful on the merits of the permit, it sought to relitigate the issue of associational standing. We, however, find that the law-of-the-case doctrine bars it from doing so and affirm the trial court.

### Facts and Procedural History

IKEC owns and operates a coal-fired electric generating station in Jefferson County, Indiana, known as Clifty Creek Station. In December 2002, Indiana Department of Environmental Management (IDEM) renewed IKEC's permit to operate a coal ash landfill near Clifty Creek Station. Later that month, Citizens Groups filed a petition for review of IKEC's permit renewal with the Indiana Office of Environmental Adjudication (OEA) citing environmental and public health concerns. IKEC petitioned to intervene, which the environmental law judge granted. IKEC moved to dismiss Citizens Groups' petition for review in February 2003 and again in March on grounds that Citizens Groups' petition did not satisfy the Indiana Administrative Orders and Procedures Act (AOPA) because Citizens Groups' "reliance on injuries to its members resulting from the permit renewal w[as] not sufficient to confer standing." Appellant's App. p. 71; *see also* Ind.Code

§ 4–21.5–3–7(a)(1)(B) (petitioner must be "aggrieved or adversely affected by the order"). Citizens Groups then filed an amended petition for review at the end of March. This time Citizens Groups relied on associational standing, which is a doctrine that allows organizations to sue on behalf of their members, to initiate OEA review of the permit renewal.

In a June 2003 non-final order, the OEA denied IKEC's motions to dismiss because Citizens Groups met the requirements for associational standing; therefore, Citizens Groups "may represent their members' interests in the review of IDEM's grant of the solid waste permit for Clifty Creek Station." Appellant's App. p. 80. In July 2003, IKEC filed a verified petition for judicial review and complaint for declaratory judgment in Marion Superior Court. IKEC argued that it was entitled to interlocutory review under AOPA because (1) the OEA proceeding is unlawful because Indiana does not recognize associational standing and (2) "IKEC is without any adequate administrative remedy, and pursuit of any remedy at the administrative level would be futile." Appellees' App. p. 4, 7. IKEC later filed a motion for summary judgment on its complaint for declaratory judgment. Citizens Groups then moved to dismiss IKEC's action, claiming that the trial court lacked subject matter jurisdiction because IKEC failed to satisfy AOPA requirements for judicial review of non-final orders. Appellant's App. p. 187.

In October 2003, the trial court denied Citizens Groups' motion to dismiss and ruled that the court had subject matter jurisdiction over IKEC's interlocutory action. *Id.* at 285. The trial court then granted IKEC's requested relief—a declaration and partial summary judgment that

an organization or membership association does not satisfy the jurisdictional

standing requirement of Ind.Code § 4–21.5–3–7(a)(1)(B) by stating facts that demonstrate that its members are aggrieved or adversely affected by the order of which review is sought. In order to invoke administrative review under AOPA, a petitioner seeking review under Ind.Code § 4–21.5–3–7(a)(1)(B) must petition for review in a writing that states facts demonstrating that "the petitioner is aggrieved or adversely affected by the order" of which review is sought. Allegations by an unaffected association that members of the association (or any other persons than the petitioner itself) are aggrieved are not sufficient to invoke the tribunal's jurisdiction over the case.

*Id.* at 295 (citation omitted).

Citizens Groups appealed to this Court, and we reversed in January 2005. *Save the Valley, Inc. v. Indiana–Kentucky Elec. Corp.* ("*Save the Valley I*"), 820 N.E.2d 677 (Ind.Ct.App.2005), *aff'd on reh'g,* 824 N.E.2d 776 (Ind.Ct.App.2005), *trans. denied.* Specifically, Citizens Groups argued that they had standing to petition for administrative review of the grant of IKEC's petition under the doctrine of associational standing. *Id.* at 679. IKEC responded that AOPA did not give them standing to petition for administrative review. *Id.* We first noted that the issue had not been addressed in Indiana. *Id.* We began our analysis with a recent Indiana Supreme Court decision:

> In *Huffman v. Office of Environmental Adjudication,* 811 N.E.2d 806 (Ind. 2004), our supreme court recently addressed the issue of standing to seek administrative review. In that case, the court addressed whether the judicial doctrine of standing applied to administrative proceedings. The court concluded that there was no clear evidence of a legislative intent to make the class of persons who may seek administrative review and the class of persons who have standing one and the same. The court held, "the statute, and only the statute, defines the class of person who can seek administrative review of agency action." The statute and *Huffman* are silent regarding an association's standing to sue on behalf of its members.
>
> The United States Supreme Court has concluded that an association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 344, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383 (1977).

*Id.* at 679–80 (some citations omitted). We noted that several states had adopted the *Hunt* test and allowed associations to proceed on behalf of their members. *Id.* at 680. We explained that associational standing advances two important objectives: judicial economy and efficiency. *Id.* That is, the *Hunt* requirements allow a single plaintiff, in a single lawsuit, to adequately represent the interests of many members, avoiding repetitive and costly independent actions. *Id.* Although IKEC argued that three Indiana cases rejected associational standing, we disagreed with IKEC's reading of those cases. *Id.* at 681. We ultimately concluded:

> [Citizens Groups] were not proceeding in their own right nor were they asserting that the public as a whole was harmed by the granting of the permit. Instead, [Citizens Groups] were proceeding on behalf of specific members

who were individually aggrieved or adversely affected by IDEM's decision. Because [Citizens Groups] were simply acting in a representational capacity on behalf of the members who were aggrieved or adversely affected by the granting of the permit, Indiana Code Section 4–21.5–3–7 is satisfied. In this context, the associations' standing is based on its members possessing standing to seek administrative review in their own right. We see no reason why [Citizens Groups] should not be permitted to seek administrative review under the doctrine of associational standing.

\* \* \* \* \* \*

Finally, based on our conclusion that [Citizens Groups] had standing to seek administrative review, we must also conclude that the trial court improperly denied their motion to dismiss IKEC's petition for judicial review and complaint for declaratory judgment. Because [Citizens Groups] had standing, the OEA had jurisdiction over the case, requiring [IKEC] to comply with the AOPA procedures for seeking judicial review.

*Id.* at 681–82, 682 (footnote omitted).

IKEC sought rehearing. In March 2005, we affirmed our opinion but clarified as follows:

[B]ecause [Citizens Groups] had associational standing to seek administrative review and the OEA had jurisdiction over the case, it necessarily follows that the trial court was without subject matter jurisdiction and that [IKEC] must comply with AOPA procedures for seeking judicial review.

*Save the Valley ("Save the Valley II"),* 824 N.E.2d at 776. IKEC petitioned for transfer, which the Indiana Supreme Court denied.

In September 2005, the trial court remanded the case back to the OEA "for further proceedings consistent with the decision of the Court of Appeals of Indiana in [*Save the Valley* ]." Appellant's App. p. 375.

As the OEA proceedings progressed to the substantive matter of IKEC's permit, IKEC continued to challenge Citizens Groups' ability to rely on associational standing to obtain administrative review. Specifically, in 2005, IKEC filed a motion to dismiss the petition for review and a motion to reconsider the OEA's June 2003 order in light of new authority. The OEA denied the motions in a March 2006 order:

Because there has been no change in controlling law or any other special circumstance since the OEA Order of June 23, 2003 that would warrant reconsideration of that Order, and because the Court of Appeals opinion in *Save the Valley* remains the binding law of the case in this litigation with respect to the OEA's jurisdiction over Citizens Groups' amended petition and Citizens Groups' ability to rely on associational standing to meet the AOPA standing requirement for administrative review, IKEC's motion to reconsider and to dismiss is hereby DENIED.

*Id.* at 105. IKEC then asked the OEA to reconsider this decision in light of the Indiana Supreme Court's June 2006 decision in *K.S. v. State,* which held that phrases like "jurisdiction over a particular case" confuse actual jurisdiction with legal error and should be avoided. 849 N.E.2d 538, 540 (Ind.2006). The OEA denied the motion to reconsider in August 2008. Appellant's App. p. 108.

IDEM again renewed IKEC's permit in April 2008.

The OEA issued a final order on March 17, 2010, which granted IKEC summary judgment on Citizens Groups' permit chal-

lenge and ended the proceeding in IKEC's favor. *Id.* at 155. Nevertheless, IKEC filed a verified petition for judicial review in Marion Superior Court. Citizens Groups filed a motion to dismiss. The trial court issued an order granting Citizens Groups' motion to dismiss in October 2010. It provides in pertinent part:

> 5. In spite of the fact that OEA has issued a final order granting IKEC summary judgment on the merits, IKEC now requests in its petition for judicial review of the final OEA disposition of the matter that this Court vacate the three intermediate OEA orders and remand with direction to dismiss Citizens Groups' 2003 petition for review. IKEC further requests that this Court set aside, clarify, or grant relief from the Superior Court's 2005 order remanding this case to OEA "for further proceedings consistent with the decision of the Court of Appeals" in *Save the Valley.* Lastly, IKEC requests that this Court declare that an organization does not satisfy the requirements for administrative review under AOPA even if that organization states facts that demonstrate that its members are aggrieved or adversely affected by an agency action.
>
> 6. The issue in the challenged OEA orders and for which IKEC seeks relief—i.e., Citizens Groups' ability to obtain administrative review on behalf of their members—has already been conclusively decided by the Court of Appeals in *Save the Valley* and is binding on this Court under the law-of-the-case and collateral estoppel doctrines. The law-of-the-case doctrine mandates that an appellate court's determination of a legal issue is binding both on the trial court on remand and on the appellate court on a subsequent appeal, given the same case with substantially the same facts. Collateral estoppel operates to bar re-litigation of an issue where that issue was necessarily adjudicated in a former action and the same issue is presented in a subsequent action. There is no reason why the *Save the Valley* ruling is not binding under these doctrines. Moreover, there is no indication that IKEC lacked a full and fair opportunity to litigate the issue of associational standing decided in *Save the Valley* and in the challenged OEA orders.
>
> 7. In addition, the issues decided in the challenged OEA orders are now moot. When the principal questions at issue have ceased to be matters of real controversy between the parties or when the court is unable to render effective relief upon an issue, the alleged errors become moot questions and the court will not retain jurisdiction to decide them. IKEC prevailed on the permit challenge in the OEA proceeding below, and it is unnecessary and improper to revisit the issue of Citizens Groups' ability to obtain review under AOPA § 4–21.5–3–7(a).
>
> 8. Furthermore, IKEC's action is governed by the well-established rule of law that prevailing parties generally cannot appeal a judgment in their favor and are not prejudiced by intermediate rulings that have no collateral consequences.
>
> \* \* \* \* \* \*
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Citizens Groups' Motions to Dismiss against IKEC are hereby GRANTED, that IKEC's verified petition for judicial review is denied and dismissed, and that IKEC's complaint to set aside the entry of remand of September 6, 2005 and complaint for declaratory judgment are dismissed.

Appellant's Br. p. 32–34 (citations omit-

ted).[1] IKEC now appeals.

### Discussion and Decision

 Despite winning on the merits of its solid waste permit renewal, IKEC claims it has been barred "at the courthouse steps from litigating an issue of public interest concerning whether [Citizens] Groups can rely on 'associational standing' to bring administrative proceedings challenging IKEC's environmental permits." *Id.* at 6. IKEC makes this argument despite this Court's opinion in *Save the Valley* which plainly held that Citizens Group had associational standing to obtain administrative review of IKEC's permits under AOPA on behalf of their aggrieved or adversely affected members. Although IKEC raises numerous arguments on appeal, we find that our ruling in *Save the Valley* on associational standing is binding under the law-of-the-case doctrine and therefore affirm the trial court.

As an initial matter, IKEC argues that we did not have subject matter jurisdiction to rule on associational standing in *Save the Valley* because we ruled that the trial court did not have subject matter jurisdiction; therefore, the issue of associational standing was saved "for another day." *Id.* at 14. IKEC claims that day has now arrived. To the contrary, whether Citizens Groups had standing to challenge IKEC's permit renewal and therefore whether the OEA had jurisdiction to address this was the very issue argued before the trial court and the very issue the parties then brought before this Court on appeal. *See Save the Valley I*, 820 N.E.2d at 679 ("[Citizens Groups] argue that they had standing to petition for administrative review of the granting of IKEC's petition under the doctrine of associational standing. [IKEC] respond[s] that [AOPA] does not give [it] standing to petition for administrative review."). The trial court found that it had subject matter jurisdiction because the doctrine of associational standing did not give Citizens Groups standing before the OEA pursuant to Indiana Code section 4–21.5–3–7(a)(1)(B). Simply put, the trial court found that it had jurisdiction because the OEA did not have jurisdiction. We, however, reversed the trial court and concluded, as a matter of first impression, that Citizens Groups could seek administrative review under the doctrine of associational standing, which meant that the OEA, and not the trial court, had jurisdiction. *Id.* at 682. Notably, the parties did not question our power and authority to decide the issue on appeal. In fact, it was the only issue decided on appeal. And once we decided that Citizens Groups had standing before the OEA and the trial court did not have jurisdiction, as shown below, it became the law of the case and could not be decided again. *See* 18A Charles Alan Wright et al., *Federal Practice & Procedure* § 4436 (2d ed. 2002) ("Although a dismissal for lack of jurisdiction does not bar a second action . . ., it does preclude relitigation of the issues determined in ruling on the jurisdiction question.").

 The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the appellate court in any subsequent appeal involving the same case and substantially the same facts. *Murphy v. Curtis*, 930 N.E.2d 1228, 1234 (Ind.Ct.App. 2010); *see also Pepper v. United States*, — U.S. ——, 131 S.Ct. 1229, 1250, 179

---

1. This order is also contained in Appellant's Appendix; however, it is missing a page. *See* Appellant's App. p. 9–10. Therefore, we cite to the copy contained at the end of Appellant's Brief. Although this copy does not contain page numbers, we have extrapolated page numbers for ease of reference.

L.Ed.2d 196 (2011) ("[A]s most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). The purpose of the doctrine is to minimize unnecessary relitigation of legal issues once they have been resolved by an appellate court. *Murphy*, 930 N.E.2d at 1234. This doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter. *Id.* To invoke this doctrine, the matters decided in the earlier appeal must clearly appear to be the only possible construction of an opinion. *Id.* Thus, questions not conclusively decided in the earlier appeal do not become the law of the case. *Id.*

▪ Indiana has applied this doctrine in its strictest sense and has resisted creating exceptions to the strict application of the doctrine. *Ind. Farm Gas Prod. Co. v. S. Ind. Gas & Elec. Co.*, 662 N.E.2d 977, 981 (Ind.Ct.App.1996), *trans. denied.* In fact, Indiana courts have held numerous times that the law of the case must be followed even when the earlier decision is deemed to be incorrect. *Id.* A court, however, may revisit its prior decision under extraordinary circumstances, such as when there is a significant change in the substantive law. *Id.*

We find the law-of-the-case doctrine applicable here. In *Save the Valley I*, we specifically held that Citizens Groups could seek administrative review under the doctrine of associational standing. We based this holding in part on the Indiana Supreme Court's then-recent decision in *Huffman v. Office of Environmental Adjudication*, 811 N.E.2d 806 (Ind.2004). We affirmed on rehearing, *see Save the Valley II*, 824 N.E.2d at 776 ("[B]ecause [Citizens Groups] had associational standing to seek administrative review and the OEA had

jurisdiction over the case, it necessarily follows that the trial court was without subject matter jurisdiction...."), and the Indiana Supreme Court denied transfer. The case and facts have remained essentially the same. IKEC, however, appears to argue that there are extraordinary circumstances which require us to revisit our decision.

First, IKEC argues that our Supreme Court issued *Huffman* after it filed its appellee's brief in *Save the Valley I* and therefore it did not have an opportunity to brief the issue (although Citizens Groups had the opportunity to address *Huffman* in their reply brief). However, IKEC concedes it was able to alert this Court to *Huffman* in a notice of additional authority. Moreover, we analyzed *Huffman* in our decision. Though not dispositive, our Supreme Court denied transfer in *Save the Valley*. Because we adequately addressed *Huffman* in *Save the Valley I*, the fact that IKEC did not have the opportunity to brief *Huffman* is not an extraordinary circumstance under the law-of-the-case doctrine.

Second, IKEC argues that *Save the Valley I* is no longer valid in light of *K.S. v. State*, 849 N.E.2d 538 (Ind.2006), in which our Supreme Court held that phrases like "jurisdiction over a particular case" confuse actual jurisdiction with legal error and should be avoided. IKEC claims that jurisdiction over the case "was the cornerstone on which *Save the Valley I* rested." Appellant's Br. p. 19. Accordingly, IKEC asserts that the *K.S.* opinion "rendered *Save the Valley I* void and abrogated its discussion of associational standing." *Id.* at 22. We, however, disagree with IKEC that the cornerstone of *Save the Valley I* was the now-abolished doctrine of jurisdiction over the particular case.

In *K.S.*, our Supreme Court clarified:

Like the rest of the nation's courts, Indiana trial courts possess two kinds of "jurisdiction." Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties.

Where these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack. Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations.

849 N.E.2d at 540. The K.S. Court went on to explain, "Attorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension." *Id.* at 541. " 'The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs.' " *Id.* at 542 (quoting *Troxel v. Troxel,* 737 N.E.2d 745, 749 (Ind.2000), *reh'g denied* ). "*Real* jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing other sorts of procedural defects as 'jurisdictional' misapprehends the concepts." *Id.; see also Packard v. Shoopman,* 852 N.E.2d 927, 929–30 (Ind.2006) ("We recently observed that 'jurisdiction over the particular case' is something of a misnomer and refers to failure to meet procedural requirements but does not constitute a limitation on subject matter jurisdiction in the sense that the court cannot hear cases of the same general class.").

The issue in *Save the Valley I* was whether Citizens Groups had standing to challenge IKEC's permit and therefore whether the OEA had subject matter jurisdiction, not whether any procedural requirements were satisfied. Although we used the phrase "jurisdiction over the case," we used it just like the Supreme Court meant—that the OEA had jurisdiction over the general class of actions to which the case belonged. *K.S.* did not abrogate *Save the Valley I*'s discussion of associational standing, and it is therefore not an extraordinary circumstance under the law-of-the-case doctrine. We affirm the trial court.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.