Bernice M. REEDY, by her next friend Mentoria Headdy, Appellants,

v.

INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Appellee.

No. 53A01–0806–CV–294.

Court of Appeals of Indiana.

Nov. 25, 2008.

Rehearing Denied Feb. 2, 2009.

Jamie Andree, Indiana Legal Services, Inc., Bloomington, IN, Dennis K. Frick, Indiana Legal Services, Inc., Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Bernice Reedy appeals the trial court's affirmation of the decision by the Indiana Family and Social Services Administration ("FSSA") denying Reedy's request to include her out-of-pocket payments to her nursing facility as an allowable spend-down expense. We reverse.

### Issue

Reedy raises one issue, which we restate as whether the trial court properly affirmed the FSSA's decision not to include Reedy's nursing facility payments as an allowable spend-down expense.

### Facts

On November 29, 2005, Reedy entered a nursing facility and has resided there since then. On June 29, 2006, Reedy applied for Medicaid, and her application was approved on November 22, 2006. At that time, however, Reedy was informed that her Medicaid coverage did not include payment for nursing facility services because Reedy had improperly transferred $111,823 to become eligible for Medicaid. A transfer penalty was imposed from June 2006 until July 2007 during which Reedy would have to pay for her nursing facility care out of her own pocket.

Reedy also applied for medical assistance under Medicaid and was approved for such on July 1, 2006. Because of her monthly income, however, Reedy was required to spend-down or pay out-of-pocket $3,056 each month before Medicaid would cover other health-related services such as prescriptions, dental care, and eyeglasses. Reedy's monthly nursing facility bills are in excess of the $3,056 spend-down. During the transfer penalty period, Reedy sought to have her out-of-pocket nursing facility expenses applied toward her monthly spend-down. The local office of the FSSA rejected this request.

On January 8, 2007, Reedy requested a hearing on the matter. On March 19, 2007, a hearing was held. The administrative law judge ("ALJ") determined that

because of the transfer of property violation, Reedy's nursing facility expenses could not be applied to her spend-down.

On April 23, 2007, the FSSA approved the ALJ's decision. Reedy sought judicial review, and the trial court approved the FSSA's decision. Reedy now appeals.

## Analysis

Reedy argues that the FSSA improperly refused to credit her out-of-pocket nursing facility payments toward her spend-down. The FSSA responds by arguing that "permitting Reedy to use her nursing facility expenses for spend-down purposes would be inconsistent with her being in a transfer penalty period." Appellee's Br. p. 11.

"The Administrative Orders and Procedures Act (AOPA) limits judicial review of agency action." *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 809 (Ind.2004). In keeping with Reedy's argument, the FSSA's determination will be reversed only if we determine that Reedy has been prejudiced by an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See id.* (citing Ind. Code § 4–21.5–5–14(d)(1)). In our review, we give deference to the expertise of the agency and will not reverse simply because we may have reached a different result than the agency. *Indiana Civil Rights Comm'n v. Alder*, 714 N.E.2d 632, 635 (Ind.1999). "While an appellate court grants deference to the administrative agency's findings of fact, no such deference is accorded to the agency's conclusions of

law." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000). "An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *Id.*

It is undisputed that from June 2006 until July 2007 Reedy was subject to a transfer penalty. During the transfer penalty period, "an institutionalized individual is ineligible for medical assistance for the following services ... [n]ursing facility services...." 405 Ind. Admin. Code 2–3–1.1(d)(1) (2008) (see http://www.in.gov/legislative/iac/T04050/A00020.PDF?).[1] Reedy paid the nursing facility out-of-pocket and was not seeking to have Medicaid pay for her nursing facility care.

It is also undisputed that the Reedy's spend-down, beginning December 2006, was $3,056 "because her monthly income was more than the Medicaid income standard." Appellee's Br. p. 10. The parties agree that a spend-down is the amount of monthly out-of-pocket expenses Reedy must pay before she is eligible for non-nursing facility Medicaid benefits. *See* 405 I.A.C. 2–3–10(b).

There is no indication that the transfer penalty and the spend-down are related to or contingent on one another. In other words, the spend-down is not punitive and is based solely on Reedy's monthly income. In fact, the parties agree that these concepts are separate Medicaid provisions. The issue we must address is whether Reedy's out-of-pocket payment of her

---

1. 405 Indiana Administrative Code 2–3–1.1(f) provides, "If an individual is ineligible for medical assistance for services under this section, expenses for those services are not allowable medical expenses in calculating an individual's nursing home liability for any month of Medicaid eligibility." Reedy argues that this rule "only applies to the calculation of the liability after the transfer penalty has expired, not to determining whether the spend-down has been met during the penalty period." Appellant's Br. p. 13. Because the FSSA does not specifically respond to this characterization of the rule, we will assume it does not disagree with Reedy's reading of it. Accordingly, this rule is not applicable to the issue before us today.

nursing facility expenses during the transfer period can be applied toward her monthly spend-down.

The parties acknowledge that there is no statute, administrative code provision, or case that addresses the issue presented by Reedy. The FSSA contends, "The trial court properly paid great deference to agency's reasonable interpretation of two Medicaid provisions that were each silent as to the issue in this case." Appellee's Br. p. 11. However, our reading of the ALJ's decision shows no statutory interpretation. Instead, the decision includes the findings of fact, the legal basis, which recites various provisions of the Indiana Administrative Code and portions of the Medicaid program policy manual, and the legal conclusions, which provide:

> The appellant is not eligible for Medicaid coverage for nursing facility services or home and community-based services from June 1, 2006 through July 31, 2007 because of a transfer of property violation.
>
> The appellant is not eligible for Medicaid reimbursement methodology for nursing facility bills secondary to being in a transfer of property violation penalty period. Therefore, her level of care has not been approved by the Office.
>
> The appellant's nursing facility expenses are not an allowable medical expense for meeting her monthly spend-down while she is in a transfer of property penalty period.

Appellee's App. p. 134. Because the ALJ's decision includes only bare conclusions of law and does not include a specific statutory interpretation for our review, we need not be highly deferential to the ALJ's decision as the FSSA suggests.

■ The rules of statutory construction are applicable to the interpretation of administrative regulations. *U.S. Outdoor Adver. Co., Inc. v. Indiana Dep't. of Transp.*, 714 N.E.2d 1244, 1256 (Ind.Ct. App.1999). Generally, when interpreting a statute, the express language of the statute controls the interpretation and the rules of statutory construction apply. *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind.2003). We determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* "In so doing, we should consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation." *Id.*

Because the transfer penalty provisions of the Indiana Administrative Code do not address spend-downs, we consider the spend-down provisions to determine what is and is not counted toward an individual's spend-down. As explained in 405 Indiana Administrative Code 2–3–10(f), the following incurred medical expenses submitted to the county office[2] will be credited toward spend-down:

> (1) Medical care provided by physicians, psychiatrists, and other licensed medical practitioners.
>
> (2) Laboratory testing, x-rays, and other diagnostic procedures.
>
> (3) Dental services provided by a licensed dentist, including dentures.

---

**2.** Because Reedy is paying her nursing facility expenses directly, the claims are not submitted by a participating Medicaid provider. *See* 405 I.A.C. 2–3–10(e). Nevertheless, even if her nursing facility expenses are considered to be claims submitted by a participating Medicaid provider, Reedy is entitled to the spend-down credit. Although a service that is not payable by the Medicaid program under 405 I.A.C. 5 will not credit the spend-down obligation, *see* 405 I.A.C. 2–3–10(d), the State does not point to a provision of 405 I.A.C. 5 that excludes the out-of-pocket payment to nursing facilities.

(4) Hospitalization and outpatient treatment.

*(5) Nursing facility services and rehabilitative services.*

(6) Respiratory, occupational, speech, physical, and audiology therapy services.

(7) Prescription drugs and over-the-counter medication, including insulin, when prescribed by a licensed medical practitioner who is authorized to prescribe legend drugs under Indiana law.

(8) The cost of postage incurred by the individual for mail order prescriptions.

(9) Medical supplies, if ordered in writing by a licensed physician or dentist for treatment of a medical condition, except those items identified as noncovered medical supplies under 405 IAC 5.

(10) Durable medical equipment if ordered in writing by a licensed physician except those items listed as noncovered equipment under 405 IAC 5–19–18.

(11) Home health care provided by a licensed home health agency.

(12) Nursing services provided by a registered nurse or licensed practical nurse.

(13) Audiology services and hearing aids if ordered in writing by a physician.

(14) Prosthetic devices other than those dispensed for purely cosmetic purposes, if ordered in writing by a physician, optometrist, or dentist.

(15) Vision care services including eyeglasses, examinations, and diagnostic procedures.

(16) Cost of transportation to obtain medical services that are allowable medical expenses. If transportation is provided by a business transportation carrier, the verified carrier's charge will be allowed. If the individual or a friend or family member drives the individual to medical services, mileage cost is allowed at the rate per mile established by the Indiana legislature for state employees.

(17) The premium of the recipient's spouse who receives Medicaid for Employees with Disabilities (MED Works).

(18) Medicaid copayments and any co-payments required by other health coverage programs or health insurance carriers.

(19) Premiums for health and hospitalization insurance policies that limit benefits to the reimbursement of medical expenses.

(20) Medicare premiums.

(Emphasis added). 405 Indiana Administrative Code 2–3–10(f)(5) clearly anticipates nursing facility services being credited toward the spend-down.

Further, even if Reedy's spend-down is credited for her payment of nursing facility expenses, she must still pay her nursing facility expenses out of her own pocket. While under the transfer penalty, the spend-down only applies toward Medicaid's coverage of Reedy's non-nursing facility medical expenses, such as prescriptions, dental care, and eye glasses. We fail to see how applying the nursing facility expenses to Reedy's spend-down "cancels out" the transfer penalty as the FSSA suggests.

Similarly, under the FSSA's approach, being subject to a transfer penalty subjects an individual to an additional punitive measure by effectively raising the spend-down to the amount of the calculated spend-down plus the individual's nursing facility expenses.[3] The State points to no

---

**3.** For example, under the State's theory, if Reedy's monthly nursing facility expenses are $5,000 per month, she would pay the $5,000 plus the $3,056 monthly spend-down, a total of $8,056 out-of-pocket, before she would be eligible for Medicaid coverage. Under Reedy's theory, she would pay the $5,000 monthly nursing facility expenses, which

support for this double punishment, and without such we will not impose the extra burden on Reedy.

Finally, as the State Eligibility Consultant, Lisa Chaplin, testified at the administrative hearing, this case came about after the method in which Medicaid claims were submitted changed. Prior to January 2006, the claims appear to have been manually submitted, and after that date claim submission was computerized. Chaplin stated that, before the "automation of the spend-down," in most cases the out-of-pocket expenses "were credited toward the spend-down manually." Appellee's App. p. 26. Chaplin noted, "It doesn't mean we were doing it correctly but I believe that's the way she used to do it." *Id.* at 27. Without more, the change from manual claim submission to automated claim submission does not support a policy change requiring an individual to pay the nursing

facility expenses in addition to the spend-down every month.

For these reasons, the FSSA's determination that Reedy's nursing facility expenses cannot be credited toward her spend-down is contrary to law. Accordingly, the trial court erred in affirming the FSSA's decision.

### Conclusion

We conclude that Reedy's nursing facility expenses can be credited toward her spend-down. We reverse.

Reversed.

FRIEDLANDER, J., and DARDEN, J., concur.

---

would apply toward her spend-down, limiting her monthly out-of-pocket expenditure to

$5,000—an amount that is still greater than her monthly spend-down.