892 N.E.2d 1281 (2008)
Virginia PERRY, Gregg Terhune, and other similarly situated individuals, Petitioners,
v.
INDIANA DEPARTMENT OF LOCAL GOVERNMENT FINANCE, Madison Township Board, Larry Campbell, as President of the Madison Township Board, George Robertson, as Secretary of the Madison Township Board, Scott McDonough, as Member of the Madison Township Board, and Jim Bolin, as Madison Township Trustee, Respondents.
No. 49T10-0712-TA-78.
Tax Court of Indiana.
August 22, 2008.
*1282 Todd A. Richardson, Joseph P. Rompala, Kevin Morrissey, Lewis & Kappes, P.C., Indianapolis, IN, Attorneys for Petitioners.
Stephen R. Buschmann, Jeffrey M. Bellamy, Thrasher Buschmann Griffith & Voelkel, P.C., Steve Carter, Attorney General of Indiana, John D. Snethen, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondents.
FISHER, J.
Virginia Perry, Gregg Terhune, and other similarly situated individuals (the Petitioners) appeal the two final determinations of the Department of Local Government Finance (DLGF) approving Morgan County, Madison Township Board's (Board) loan resolutions. The Petitioners allege that the DLGF's final determinations are contrary to law, unsupported by the evidence, contrary to the weight of the evidence, arbitrary and capricious, and constitute an abuse of discretion. (See Petrs' V. Pet. for Judicial Review ¶ 6.)

FACTS AND PROCEDURAL HISTORY
On March 21, 2007, the Board passed two resolutions authorizing Madison Township to incur several loans to support its firefighting operations. Specifically, the Board authorized an emergency loan, not to exceed $700,000.00, in order to fund the fire department's operating expenses through the end of the year. The Board also authorized an equipment loan, not to exceed $650,000.00, so that the township could replace one of its two fire engines, replace one of its two ambulances, and purchase related equipment for those emergency vehicles.
On March 30, 2007, the Petitioners filed objections to the Board's resolutions with the Morgan County Auditor (Auditor), stating that they believed the proposed indebtedness to be "unnecessary and unwise." The Auditor certified their objections and forwarded the matter to the DLGF.
The DLGF held two separate hearings on the Petitioners' objections on April 25, 2007. On November 2, 2007, the DLGF issued its final determinations approving each of the loans; the DLGF, however, modified the amount of the emergency loan from $700,000 to $409,000.[1]
The Petitioners subsequently filed this original tax appeal. On July 11, 2008, the Court heard the parties' oral arguments. Additional facts will be supplied as necessary.

ANALYSIS AND OPINION

Standard of Review
When this Court reviews a DLGF final determination, it gives great deference to *1283 the DLGF's factual findings as long as they are supported by substantial evidence.[2]See Huffman v. Office of Envtl. Adjudication, 811 N.E.2d 806, 809 (Ind. 2004) (citations omitted) (footnote added). The Court, however, reviews the DLGF's conclusions of law de novo. See id. (citations omitted). See also Filter Specialists, Inc. v. Brooks, 879 N.E.2d 558, 571 (Ind. Ct.App.2007) (citation omitted).

Discussion
On appeal, the Petitioners assert that in approving the loan requests, "the DLGF misinterpreted key statutory provisions and ignored substantial evidence [demonstrating] that the loans constituted unnecessary expenditures." (Petrs' Br. at 12.) Specifically, the Petitioners argue that the DLGF: 1) erred in approving the emergency loan because no "emergency" in fact existed; and 2) erred in approving the equipment loan because the need for such equipment was not demonstrated. (Petrs' Br. at 1.) (See also Petrs' V. Pet. for Judicial Review ¶ 6.) Each of these arguments will be addressed in turn.[3]

1. The Emergency Loan
"Each township shall annually establish a township firefighting fund which is to be the exclusive fund used by the township for the payment of costs attributable to providing fire protection or emergency services ... and for no other purposes." IND.CODE ANN. § 36-8-13-4(a) (West 2007). The fund is generally financed through a property tax levy. See A.I.C. § 36-8-13-4(b). Nevertheless, if the township's board determines that "there is an emergency requiring the expenditure of money not included in the [] budget estimates and levy ... it may issue a special order ... authorizing the executive to borrow a specified amount of money sufficient to meet the emergency." IND. CODE ANN. § 36-6-6-14(b) (West 2007). The term "emergency" is defined as "a situation that could not reasonably be foreseen and that threatens the public health, welfare, or safety and requires immediate action." IND.CODE ANN. § 36-1-2-4.5 (West 2007).
The Board authorized the emergency loan because the township's firefighting fund was inadequate to finance the township's fire operations through the remainder of 2007. (See Cert. Admin. R. at 87, 89; Cert. Admin. R. Ex.A(1) at 86.) Consequently, the loan proceeds would be used "to finance firefighters['] salaries, FICA, health insurance[,] and other essential operating expenses[.]" (Cert. Admin. R. at 87.)
On appeal, the Petitioners argue that the township's firefighting fund is insufficient to cover firefighting expensesnot because of an emergencybut because of the newly-elected Board's "poorly-timed" decision to transition the fire department, *1284 effective July 1, 2007, from "paid stand-by" status to "career/full-time" status.[4],[5] (See Petrs' Br. at 18 (stating that, in the past, the fire department had been adequately staffed with "paid stand-bys" and there was nothing to suggest that, in remaining so staffed, the provision of fire services would be affected in such a way that would pose an immediate threat to the public's safety) (footnotes added).) Thus, the Petitioners claim, the DLGF's approval of the emergency loan does not meet the requirements of Indiana Code § 36-1-2-4.5 because:
it is difficult to imagine how it could be any[thing] other than "reasonably foreseen" that the decision to transition to full time firefighting positions ... without also making a corresponding reduction in other budget items to remain within known revenue would require additional funds. More precisely, it should be self-evident that a decision to ignore an approved budget and to exceed projected revenue by approximately $700,000[] would render reasonably foreseeable the need to request additional funds to make up the budgetary shortfall.
(Petrs' Br. at 16.) The Petitioners, however, have missed the point.
When the new Board convened in January of 2007, the 2007 firefighting budget had already been set. The budget allowed for each of the township's two fire stations to be staffed with only four personnel per day: two personnel to provide basic life support ambulance coverage and the other two to provide fire coverage. (See Cert. Admin. R. Ex.A(1) at 94.) The budget only allowed for one paramedic within the township. (Cert.Admin.R.Ex.A(1) at 94.) Furthermore, the budget only allowed for a "paid stand-by" wage for the entire firefighting force: the professionals were paid approximately $10/hour and were eligible to receive health insurance coverage if they met a time-worked standard; they did not receive any vacation time or sick leave. (Cert.Admin.R.Ex.A(1) at 94.)
During the DLGF hearing, Madison Township's fire chief provided several reasons as to why the township's 2007 firefighting budget was inadequate. First, at four personnel per station per day, the fire stations were understaffed, pursuant to federal guidelines, for fighting fires. (See Cert. Admin. R. Ex.A(1) at 94.) Second, given that the number of home-response volunteer firefighters has been gradually decreasing over the years (consistent with a national trend), the fire department must hire career firefighters to fill that void in manpower; offering career firefighters "paid stand-by" is not a competitive wage. (See Cert. Admin. R. Ex.A(1) at 94-95.) Third, because the number of emergency medical runs within the township increased nearly 300% between 2000 and 2006, a *1285 second paramedic must be hired. (See Cert. Admin. R. Ex.A(1) at 82, 94-97.) (See also Cert. Admin. R. Ex.A(1) at 82.) Finally, Madison Township has seen exponential population growth over the last five years and there is no expectation that the growth will cease; consequently, the fire department must make staffing adjustments now so as to be able to respond to the needs of the township's continued growth. (See Cert. Admin. R. Ex.A(1) at 81, 99; Cert. R. Tr. at 2:37-39.)
The decision as to how to best provide firefighting services within the township is one that properly lies with the local fire department and the Board. Consequently, they have a great deal of discretion in implementing policies that best meet the needs of the citizens of the township as a whole. Here, the Board determined that unless the township adopted a full-time fire department policy, the township would not be able to provide adequate firefighting services to its citizens. Such a situation was "a situation that ... threaten[ed] the public health, welfare, or safety and require[d] immediate action." See A.I.C. § 36-1-2-4.5. At that point, immediate action required an emergency loan. As a result, the DLGF did not err in approving the Board's emergency loan request.

2. The Equipment Loan
Indiana Code § 36-8-13-3 authorizes a township to
[p]urchase firefighting and emergency services apparatus and equipment for the township, provide for the housing, care, maintenance, operation, and use of the apparatus and equipment to provide services within the township ... and employ full-time or part-time personnel to operate the apparatus and equipment and to provide services in that area.
IND.CODE ANN. § 36-8-13-3(a)(1) (West 2007). On appeal, the Petitioners complain that the Board has "grossly overstepped" this purchasing power. More specifically, they contend that the Board has not demonstrated "the necessity [for] purchasing several brand new pieces of equipment, nor [has] it show[n] why [the] current equipment must be replaced at the present time." (Petrs' Br. at 23.) Instead, the Petitioners claim that the Board has shown nothing more than it wants the equipment. (See Cert. Admin. R. at 34.) The Court, however, must disagree.
During the DLGF's hearing, evidence was presented indicating that the township's firefighting fleet consists of two engines, two tankers, two ambulances, one brush truck, and one other rescue vehicle. (See Cert. Admin. R. Ex.A(1) at 88.) These vehicles, which are distributed between the township's two fire stations, serve an estimated population of over 11,000. (Cert. R. Tr. at 1:2; Cert. Admin. R. Ex.A(1) at 81.) The proceeds from the equipment loan would be used to replace one of the engines that, at 14 years old, was at the end of its 15-year life expectancy. (Cert.Admin.R.Ex. A(1) at 88; Cert. R. Tr. at 2:30.) The engine costs the township $20,000 annually in repairs and maintenance and was actually out of service for 87 days in 2006 due to repairs.[6] (Cert.Admin.R.Ex.A(1) at 88, 97; Cert. R. Tr. at 2:26, 30 (footnote added).) The proceeds of the loan would also be used to *1286 replace an ambulance that is approximately ten years old with 117,000 miles on it. (Cert.Admin.R.Ex.A(1) at 88, 97; Cert. R. Tr. at 2:31-32.) The ambulance costs the township $10,000 annually to maintain. (Cert.Admin.R.Ex.A(1) at 88.)
Madison Township's fire chief also testified that, in conjunction with the fact that the vehicles are at the end of their operational life, an increase in their usage, as well as their inability to carry the proper tools, has contributed to the overall need to replace the vehicles. More specifically, the fire chief explained that with the great population growth in Madison Township, the "run load" of the fire engines has doubled within the last couple of years, and the training hours on those vehicles has quadrupled. (Cert.Admin.R. Ex.A(1) at 97; Cert. Admin. Tr. at 2:33.) Similarly, the number of ambulance runs has tripled since 2000 (from 200 to approximately 600 in 2006). (Cert.Admin.R.Ex.A(1) at 95, 97; Cert. Admin. Tr. at 2:31-33.) Finally, the vehicles and their supporting equipment are so outdated they do not have the capability to place the equipment on other vehicles; as a result, the fire department often has to take several vehicles to the scene of an emergency in order to transport the auxiliary firefighting equipment. (See Cert. Admin. Tr. at 2:34-35.)
A reasonable mind would accept this evidence as adequate to support the conclusion that the township needed the new equipment. See Amax Inc. v. State Bd. of Tax Comm'rs, 552 N.E.2d 850, 852 (Ind. Tax Ct.1990) (citation omitted). In attempting to rebut this evidence, the Petitioners advanced two arguments at the administrative level which they claim support the opposite conclusion. The Petitioners are mistaken.
First, the Petitioners argued that the evidence presented regarding new neighborhood developments within the township, and the amount of assessed valuation the developments would add to the tax base, was inaccurate. (See Cert. Admin. R. Ex.A(1) (township's evidence suggesting that on completion of the projects, the tax base would double from the roughly current assessed valuation of $420,000,000 to $876,000,000).) More specifically, the Petitioners asserted that the township's tax base could not grow as much as the township projected because several of the developments were only partially complete or had not yet begun construction, one development could simply not be as large as the township claimed, and another of the developments had essentially been "scrapped" for the time being due to zoning restrictions. (See Cert. Admin. R. Ex. A(1) at 66, 100-01.)
While there may be some disagreement as to how much Madison Township's tax base will increase with these development projects, the Petitioners have not shown that the township and its tax base is not growing. Consequently, even assuming a slower growth rate than what the township projected, the fact that the vehicles are at the end of their operational life is enough to support replacement.
The Petitioners also complained that the township's evidence as to the vehicles' usage was inflated. Specifically, they argued that while the "run rates" have increased dramatically, it was due in large part to the fire department's policy to send both a fire engine and an ambulance to the same emergency medical call. (Cert. Admin. R. Ex.A at 6; Cert. Admin. Tr. at 2:42-43 (proposing that the fire department could "maybe find some savings" by sending only one vehicle per call).)
As this Court has already stated, the decision as to how to best provide firefighting services within the township is one that properly lies with the local fire department *1287 and the Board. Thus, whether or not two vehicles should respond to an emergency call was not for the DLGF to decide. Rather, the DLGF was required to determine whether substantial evidence supported that policy decision. Thus, the DLGF did not err in approving the equipment loan.

CONCLUSION
The Petitioners have demonstrated that they do not want to pay for additional firefighters or new firefighting equipment. They have not demonstrated, however, that the DLGF's final determinations were not supported by substantial evidence or not in accordance with the law. As a result, the DLGF's final determinations are AFFIRMED.[7]
NOTES
[1] Prior to the DLGF's final determination with respect to the emergency loan, the township reduced its request from $700,000 to $613,636. (See Cert. Admin. R. at 87.)
[2] Substantial evidence means "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Amax, Inc. v. State Bd. of Tax Comm'rs, 552 N.E.2d 850, 852 (Ind. Tax Ct.1990) (citation omitted).
[3] During the administrative hearing process, the Petitioners also argued that the Board was biased in its loan authorizations, as all three of its members were firefighters (one specifically within the Madison Township Fire Department). (See Cert. Admin. R. at 36, 107, 109; Cert. R. Tr. at 2:44-45.) The Petitioners did not address this issue at oral argument and their brief merely states that "[t]his relationship presents a case of questionable self-interest for the members of the Board. Although no precedent directly requires this Court to overturn a decision of the Board based on a conflict of interest, this relationship seriously undermines the propriety of the Board['s] actions[.]" (Petrs' Br. at 4 n. 3.) Because the Petitioners have not fully developed this argument on appeal, it does not present an issue for the Court to resolve.
[4] The record shows that the Board's three members, as well as the township's Trustee, were newly elected to their positions in the 2006 general election. They all ran on a pro-firefighter platform. These members did not, however, set the 2007 firefighting budget; rather the 2007 budget was set by the previous board in 2006. Interestingly, one of the previous board members was Virginia Perry, who is also a Petitioner in this case. Ms. Perry also ran for the township Trustee position in the 2006 general election but was defeated. (See Cert. Admin. R. Ex.A(1) at 81-82.)
[5] The Petitioners allege that the decision was "poorly-timed" because: 1) in comparison to other townships in Morgan County, Madison Township is providing substantial revenue to its fire department; 2) the township's firefighting expenses have been growing faster than its total tax base; and 3) the economic health of Madison Township is not good as evidenced by the number of homes listed as "for sale by owner" or in foreclosure on www. foreclosures.com. (See Cert. R. Tr. at 2:4-5, 7-11.)
[6] As the fire chief testified:

What happens in those 87 days is we end up having to run one of our tanker trucks as our first out firetruck. [A tanker] truck[ is] ... completely set up for different firefighting functions. . . . It's typically meant to [just] haul water[.] . . . [Furthermore, o]ne of our tankers currently only seats two people[, s]o we cannot even get the adequate number of fire personnel on that truck when we have to use it on a first-out basis.
(Cert. R. Tr. at 2:30-31.)
[7] The Court is mindful of the political rancor surrounding this litigation. See supra n. 4. Nevertheless, it is not the function of this Court to determine whether Madison Township's transition to a full-time fire department, or its purchase of additional vehicles and equipment, were good policies or bad policies. Rather, this Court can only decide whether the DLGF's loan approvals were supported by substantial evidence and in accordance with the law.