Phyllis and Michael **KLOSINSKI**, Appellants–Petitioners,

v.

**CORDRY SWEETWATER CONSERVANCY DISTRICT**, Appellee–Respondent.

No. 07A01–1008–PL–429.

Court of Appeals of Indiana.

April 12, 2011.

Rehearing Denied June 16, 2011.

See also 918 N.E.2d 470.

John Emry, Franklin, IN, Attorney for Appellant.

Douglas A. Hoffman, Carson Boxberger, Bloomington, IN, Roger A. Young, Young and Young, Franklin, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Phyllis and Michael Klosinski appeal the trial court's judgment in their action against the Cordry Sweetwater Conservancy District ("the District"). We affirm in part and reverse in part.

### Issues

The Klosinskis raise several issues, which we consolidate and restate as whether the trial court erred by partially denying their request for injunctive relief. On cross appeal, the District argues that the trial court erred by finding that the Klosinskis were "aggrieved" parties for purposes of filing a mandate or injunction action against the District pursuant to Indiana Code Section 14–33–5–24.

### Facts

The District was established in Brown County in June 1959 for the purposes of: (1) "[p]roviding water supply, including

treatment and distribution for domestic, industrial and public use"; (2) "[p]roviding for the collection, treatment, and disposal of sewage and other liquid wastes produced within the district"; and (3) "[d]eveloping forests, wildlife area, and park and recreational facilities [where] feasible in connection with beneficial water management." App. p. 64. A board of directors was established and created a district plan ("District Plan"), which was approved by the trial court on August 7, 1961. On August 3, 1972, the trial court approved an amendment to the District Plan. In 1974, the District again sought to amend its District Plan. On February 21, 1975, the trial court approved some of the proposed amendments, but it struck down others because they were beyond the District's statutory authority.

The Klosinskis have owned real estate in the District since 1979. On April 4, 2008, the Klosinskis filed a petition for writ of mandate, injunctive relief, damages, and attorney fees against the District.[1] The Klosinskis filed a petition for a preliminary injunction, which the trial court denied. The District and the Klosinskis filed motions for summary judgment, which the trial court also denied. Essentially, the Klosinskis argued that a mandate was necessary because the District was failing to construct sanitary sewer facilities and failing to keep the lakes' coves free of sediment. The Klosinskis argued that an injunction was necessary because the District was exceeding its statutory authority by enacting rules concerning building codes, use of roads within the District, creation of a police force, the keeping of wild and domestic animals, vegetation, use of firearms, hunting, fishing, swimming, use of the lakes, discontinuing water service, attorney fees, and private septic systems.[2]

After a bench trial, the trial court issued a twenty-three-page order denying the Klosinskis' petition for mandate and granting in part and denying in part their petition for an injunction. The trial court found that the Klosinskis had standing to file their petition for mandate and injunction. The trial court addressed each of the Klosinskis' arguments and determined that they were not entitled to a mandate. Further, the trial court addressed each of the Klosinskis' requests for injunctions. In most instances, the trial court denied the Klosinskis' requests for injunctions. However, regarding some arguments, the trial court did issue a general injunction prohibiting the District from establishing or enforcing any rule that does not further its statutory purpose. The Klosinskis now appeal, and the District cross appeals.

**Analysis**

On appeal, the Klosinskis argue that the trial court erred by denying their petition for an injunction against the District.[3] The District argues on cross appeal that the trial court erred by finding that

---

1. The Klosinskis also filed a petition with the Indiana Tax Court challenging the Department of Local Government Finance's ("DLGF") approval and certification of the District's budgets and tax levies for the 2007 and 2008 tax years. *See Klosinski v. Dep't of Local Gov't Finance*, 918 N.E.2d 470 (Ind. Tax Ct.2009), *review denied.* The Indiana Tax Court granted the DLGF's motion to dismiss regarding 2008 and granted the DLGF's motion for judgment on the pleadings regarding 2007.

2. Neither party has provided us with a copy of the petition for writ of mandate, petition for preliminary injunction, or motions for summary judgment in their appendices.

3. On appeal, the Klosinskis do not raise any arguments regarding the denial of their petition for mandate.

the Klosinskis had standing to challenge the District's plan. The trial court issued sua sponte findings of fact and conclusions thereon. Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* When a trial court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions of law. *Id.*

 Findings will only be set aside if they are clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.*

### I. Standing

We begin by addressing the District's standing arguments. The trial court found that the Klosinskis had "standing" to raise their requests for mandate and injunction. Specifically, the trial court noted that "[t]he Klosinskis own property in the District; they and their property are subject to and affected by the District's rules and regulations; and they pay assessments or fees for the services provided by the District." App. p. 12. The trial court also relied upon *Indiana & Michigan Elec. Co. v. Public Serv. Comm'n*, 495 N.E.2d 779,

782 (Ind.Ct.App.1986), *trans. denied*, for the proposition that "[i]f an administrative entity attempts or takes action without benefit of statutory authority, its actions may be challenged and enjoined at the first expression of its intent to act, without requiring the aggrieved party to first suffer the unlawful intrusion."

Indiana Code Section 14–33–5–24 governs conservancy districts and provides: "An interested person adversely affected by an action committed or omitted by the board in violation of this chapter may petition the court having jurisdiction over the district to enjoin or mandate the board." No cases have addressed the meaning of "[a]n interested person adversely affected." Ind.Code § 14–33–5–24. However, our supreme court has addressed a similar issue in the context of the Administrative Orders and Procedures Act ("AOPA").

The AOPA allows a person "aggrieved or adversely affected" by an order to file a petition for review. I.C. § 4–21.5–3–7. In *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806 (2004), our supreme court held that the "judicial doctrine of standing" was inapplicable where the AOPA identifies who may pursue an administrative proceeding. *Huffman*, 811 N.E.2d at 809. In defining a person "aggrieved or adversely affected," our supreme court noted:

Black's Law Dictionary 73, 1154 (8th ed.2004), defines "aggrieved" as "having legal rights that are adversely affected," and "aggrieved party" as "a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." In another context, we have defined "aggrieved" as: [A] substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation.... The appellant must have a

legal interest which will be enlarged or diminished by the result of the appeal. *Id.* at 810 (internal citations omitted). "Essentially, to be 'aggrieved or adversely affected,' a person must have suffered or be likely to suffer in the immediate future harm to a legal interest, be it a pecuniary, property, or personal interest." *Id.* The court noted that the "concept of 'aggrieved' is more than a feeling of concern or disagreement with a policy; rather, it is a personalized harm." *Id.* at 812. The court concluded that "[t]he language of AOPA does not allow for administrative review based on a generalized concern as a member of the public." *Id.*

During the trial, Phyllis Klosinski identified no specific controversy with the District. The Klosinskis have not been denied a building permit, they have not tried to subdivide their lot and been denied, they have not applied for and been denied the ability to have wild animals, they have not been fined or ticketed for hunting, fishing, boating, or swimming improperly, they have not been sued by the District, the District has not sought attorney fees from them, and the District has not disconnected their water supply. Phyllis did testify that the District had requested to inspect their septic system, and the Klosinskis had refused. Otherwise, Phyllis simply complained that she was paying taxes to the District and that the District was using the taxes "to force other people to do things the District has no authority to provide." Tr. p. 112.

█ The Klosinskis argue that they have standing because they are taxpayers in the District and that they have public standing to question the legality of the District's rules. Our supreme court recognized in *Huffman* that general standing principles are inapplicable where a statute identifies who may pursue an administrative proceeding. *Huffman*, 811 N.E.2d at 809. Statutes governing conservancy districts provide that, to bring an action for mandate or injunction against the District, the Klosinskis must have been "adversely affected" by the District's action or lack of action. I.C. § 14-33-5-24. General standing principles are inapplicable here. To be "adversely affected," the Klosinskis must have more than a generalized concern. They must identify a specific harm to a pecuniary, property, or personal interest. Simply arguing that they are taxpayers is insufficient.

Problems that arise when a party is not "adversely affected" are apparent in the trial court's order here. With regard to several of the Klosinskis' arguments, the trial court partially granted an injunction against the District. For example, with respect to the District's Building Code, the trial court concluded:

> [T]he Petitioners' request for injunction will be granted to the extent that the District is permanently enjoined from establishing or enforcing any building codes or rules that do not further the District's statutory purposes or implement the court approved District plan. Again, individual review of various provisions will have to be conducted in specific cases with specific factual disputes if and when they arise.

App. p. 24. There is no evidence or claim that the District has attempted to enforce any building codes or rules against the Klosinskis.

We have held that "[w]here the plaintiff has not a concrete legal interest sufficient to warrant an action or else the defendant has no tangible conflicting interest; ... the court's judgment, if rendered, would not change or affect legal relations." *City of Hammond v. Bd. of Zoning Appeals,* 152 Ind.App. 480, 490, 284 N.E.2d 119, 126 (1972). "These cases are not justiciable in character and are properly considered as

seeking advice or an advisory opinion only." *Id.* Without a specific adverse effect to consider, the trial court's partial injunctions here are mere advisory opinions. The partial injunctions leave the District with no guidance as to what actions are outside its statutory purposes.

On appeal, the District appears to concede that the Klosinskis have an actual or active controversy with the District regarding participation in the septic inspection program. Appellee's Br. p. 2. Other than the septic inspection program, however, the Klosinskis have failed to identify any specific harm to a pecuniary, property, or personal interest. Given the Klosinskis' lack of adverse effect by a District action, we conclude that the trial court erred when it determined that the Klosinskis were entitled to bring the action for an injunction against the District for anything other than the septic inspection program.

## II. Septic Inspection Program

The Klosinskis argue that the District is exceeding its statutory authority by regulating private septic systems within the District. According to the Klosinskis, private septic systems may be regulated only by the Brown County Health Department and the Indiana Department of Health. The Klosinskis rely on *Hopkins v. Tipton Co. Health Dep't*, 769 N.E.2d 604 (Ind.Ct. App.2002), for the proposition that only the Brown County Health Department and the Indiana Department of Health have the authority to regulate septic systems. However, as the trial court pointed out, *Hopkins* concerns the Home Rule Act, Indiana Code Chapter 36–1–3, which is inapplicable here.

"The Home Rule Act abrogated the traditional rule that local governments possessed only those powers expressly authorized by statute and declared that a local government possesses '[a]ll other powers necessary or desirable in the conduct of its affairs.'" *City of Gary v. Indiana Bell Tel. Co., Inc.*, 732 N.E.2d 149, 153 (Ind. 2000) (citing Ind.Code § 36–1–3–4(b)(2)). "The Home Rule Act significantly expanded the powers of 'units' of local government, but expressly prohibited regulation by local agencies of conduct already regulated by a state agency." *Worman Enterprises, Inc. v. Boone County Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 373 (Ind. 2004). The Home Rule Act applies to "units," which are defined as a "county, municipality, or township." I.C. § 36–1–3–1; 36–1–2–23. The District is none of these. Thus, *Hopkins* and the Home Rule Act are inapplicable here.

The Klosinskis attempt to distinguish *Worman* by arguing that the solid waste district at issue in *Worman* had a specific grant of authority by statute to regulate solid waste and that, here, the District was not granted authority to regulate private septic systems. When the District was created in 1959, one of its purposes was "[p]roviding for the collection, treatment, and disposal of sewage and other liquid wastes produced within the district." App. p. 64; *see* I.C. § 14–33–1–1 (discussing the statutory purposes of conservancy districts, including "[p]roviding for the collection, treatment, and disposal of sewage and other liquid wastes"). According to the Klosinskis, the District may accomplish this purpose only by "establish[ing] and operat[ing] a *public* system of waste removal...." Appellant's Br. p. 10 (emphasis added).

■ We do not read the District's purpose so narrowly. In fact, Indiana Code Section 14–33–23–6 provides that the article regarding conservancy districts "shall be liberally construed to accomplish the purpose of creating districts by which local water management problems can best be solved." The District's purpose does not limit its ability to regulate the collection,

treatment, and disposal of sewage to establishing a public sewage system. Rather, the District has the ability to regulate all collection, treatment, and disposal of sewage, even the collection, treatment, and disposal through private septic systems.

In 2007, the District's Board adopted a resolution to "promote a septic system evaluation program to assure long term lake water quality and environmental health" in the District. Petitioner's Exh. 20. The Board established a committee to establish and maintain "a schedule for cleaning and inspection of Conservancy Freeholders' installed individual septic systems which, if they fail or malfunction, could drain into the lake and impair lake water quality or create a health risk." *Id.* Under the resolution, all septic system tanks were required to be cleaned and evaluated at least once every five years.[4] The Klosinskis received a notice under this resolution requesting an inspection and cleaning of their septic system, and the Klosinskis have refused to do so. Given the District's ability to regulate the collection, treatment, and disposal of sewage, we conclude that the District was not exceeding its statutory authority by implementing the septic inspection program.[5] Thus, we conclude that, even if the Klosinskis were adversely affected by the septic system inspection request, their argument that the District is exceeding its statutory authority fails. The trial court properly denied the Klosinskis' request for an injunction regarding this issue.

## Conclusion

The Klosinskis were not adversely affected by an action of the District and were not entitled to bring an action against the District, except with respect to the issue that the District concedes. However, even assuming the Klosinskis were adversely affected by the District's implementation of the septic inspection program, the District was not acting outside of its statutory authority when it implemented that program. We conclude that the trial court erred by finding the Klosinskis were adversely affected, and we reverse that determination. We conclude that the trial court properly denied the Klosinskis' request for an injunction regarding the septic inspection program, and we affirm that determination.

Affirmed in part and reversed in part.

VAIDIK, J., concurs.

BAKER, J., dissents in part and concurs in part with separate opinion.

BAKER, Judge, dissenting in part and concurring in part with opinion.

I agree with the majority's conclusion that the trial court properly issued a gen-

---

4. An additional purpose of the District was "[d]eveloping forests, wildlife area, and park and recreational facilities [where] feasible in connection with beneficial water management." App. p. 64. Clearly, keeping the lake water free from sewage could also be considered part of developing recreational facilities in connection with beneficial water management.

We also note that, under Indiana Code Section 14–33–1–3, "a district plan or act of the board necessary to accomplish a purpose for which the district is established is not invalid because the district plan or act incidentally accomplishes a purpose other than a purpose for which the district is established."

5. The Klosinskis also argue that the District was required to issue a revenue bond in order to establish rules and regulations governing private septic systems. Revenue bonds are bonds "payable only out of the revenues derived from the improvement built with the bond proceeds." 64 Am.Jur.2d *Public Securities and Obligations* § 13. In support of their argument, they rely on Indiana Code Section 14–33–5–21. However, a plain reading of Indiana Code Section 14–33–5–21 reveals that it applies when a conservancy district is issuing revenue bonds for the construction of a public sewage system. Consequently, Indiana Code Section 14–33–5–21 is inapplicable here.

eral injunction prohibiting the District from establishing or enforcing rules that do not further the purposes that are set forth in the statute. I also agree that the trial court correctly denied the Klosinskis' request for an injunction regarding the septic inspection program. However, for reasons discussed below, I must part ways with my colleagues' conclusion that the Klosinskis lacked standing to challenge the septic inspection program because they were not "aggrieved" parties in accordance with Indiana Code section 14–33–5–24.

This statute provides that "[a]n interested person adversely affected by an action committed or omitted by the board in violation of this chapter may petition the court having jurisdiction over the district to enjoin or mandate the board." I.C. § 14–33–5–24. Because no case has specifically addressed the meaning of the terms "[a]n interested person adversely affected," the majority cites the "aggrieved or adversely affected" language contained in the Administrative Orders and Procedures Act (AOPA) and concludes that the Klosinskis lack standing to bring their action. In short, the majority observes that the Klosinskis are not aggrieved parties because they have nothing more than a "generalized concern" and cannot point to a "specific harm to a pecuniary property, or personal interest." Op. at 433. However, the record establishes that the Klosinskis own property in the District, they are subject to—and are affected by—the District's rules and regulations, and they pay assessments or fees for the services that are provided by the District. Appellants' App. p. 12.

In *Schrenker v. Clifford,* 270 Ind. 525, 529, 387 N.E.2d 59, 61 (Ind.1979), our Supreme Court observed that "[Where] a valid Indiana statute was being violated, equity may enjoin such continued wrongful activity and the nonexistence of provable damages does not prevent the granting of an injunction"; *see also Meyer v. Town of Boonville,* 162 Ind. 165, 70 N.E. 146 (1904) (observing that a resident taxpayer has standing to enjoin illegal or wrongful acts).

The statute at issue here is the Conservancy Act, Indiana Code section 14–33–1–1 et seq., and the Klosinskis asserted that the District was violating the statute by exceeding its authority in several areas. As noted above, the Klosinskis were directly affected by the District's rules and regulations, and they pay the fees for the District's services. The aim of the Klosinskis was to seek an order compelling the District to follow the law and refrain from acting beyond its authority. Thus, contrary to the majority's conclusion, I believe that the trial court properly determined that the Klosinskis were aggrieved parties and had standing to file their petition.

I would affirm the trial court's judgment in all respects.